STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Debra NOBLE, Defendant-Appellant.

Supreme Court

*No. 99–3271–CR. Oral argument February 6, 2002.—Decided June 21, 2002.*

2002 WI 64

(Also reported in 646 N.W.2d 38.)

For the plaintiff-respondent-petitioner the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-appellant there was a brief by *Thomas H. Boyd, Karl E. Robinson, Matthew D. Spohn* and *Winthrop & Weinstine, P.A.,* St. Paul, Minnesota, and oral argument by *Thomas H. Boyd.*

¶ 1. WILLIAM A. BABLITCH, J. The court of appeals reversed the perjury conviction of Debra Noble after concluding that her testimony during a John Doe proceeding should have been suppressed because during the proceeding she was questioned by a law enforcement officer who was not licensed to practice law. The court regarded the officer's conduct as a violation of the unauthorized practice of law statute and concluded that, although neither a constitutional violation nor a statutory violation requiring suppression occurred, suppression was still necessary as a sanction. We dis-

agree. Even assuming that the officer's conduct constituted the unauthorized practice of law, we conclude that suppression is not required in this case. We are not compelled by any statute, constitutional violation, or policy considerations to suppress the testimony in this case. In turn, we conclude that the court of appeals' decision must be reversed, and Noble's perjury conviction must be reinstated.

I

¶ 2. During March and April 1999, City of Prairie du Chien Detective Gerald Ostrander (Ostrander) and the State of Wisconsin Division of Narcotics Enforcement Special Agent David Matthews (Matthews) conducted a narcotics investigation in Prairie du Chien. The investigation culminated in an April 2, 1999 raid of a city tavern, Rowdy's Bar, and the arrests of Bobbie Serrano, Arlene Melvin, and Jean Boland for distribution of cocaine and marijuana. Debra Noble was present at Rowdy's Bar when the raid occurred. Her husband, Dan Noble, was also present at the bar that day, but had left the bar shortly before the police arrived.

¶ 3. Ostrander and Matthews interviewed Debra Noble on April 9, 1999, concerning drug activity at Rowdy's Bar. This interview revealed the following information. On the day of the raid, Dan and Debra Noble went to the bar so that Dan could purchase cocaine from Boland. Dan had been purchasing cocaine from Boland and Serrano for the last two years. Before that time, Dan had been purchasing cocaine from Melvin. On the day of the raid, Dan left the tavern shortly before the police arrived so that he could get some money to pay Boland for the cocaine. Debra Noble used cocaine in the past, but was not a current user.

¶ 4. Around that time, the Crawford County Circuit Court was conducting John Doe proceedings in connection with an investigation of Melvin. Debra Noble (Noble) was subpoenaed to appear in a proceeding on April 23, 1999, based on her statements during the interview.

¶ 5. On that date, Noble appeared before Crawford County Circuit Judge Michael Kirchman. Matthews, Crawford County District Attorney Timothy Baxter, and Jeff Brinkman, Noble's attorney, were also present in the courtroom. At the hearing, Noble was sworn and then informed by Judge Kirchman of her right against self-incrimination, of her right to claim privilege to certain questions, of her right to confer with her attorney, and of the ramifications of any untruthful testimony.[1] After a short discussion with Noble's attorney, Judge Kirchman then stated that Matthews would

---

[1] The court specifically informed Noble as follows:

Q [The court]: Okay. And you're here with Attorney Jeff Brinckman [sic]. Now, let me go through this information for you. Have you ever been in a John Doe proceeding before?

A [Noble]: No.

Q: All right. Let me tell you what it's about. This is a John Doe proceeding before a judge, myself, and under our Wisconsin law the circuit judge has the power to subpoena witnesses and compel testimony before the John Doe. So you're directed to answer all questions that are put to you, remembering that you've just taken the oath. If you believe that a truthful answer to any of the questions that are asked of you would incriminate you, that is, subject you to a criminal prosecution, you can refuse to answer the question on the grounds that it may incriminate you. Do you understand that?

A: Yeah.

Q: The Fifth Amendment privilege.

A: Yeah.

conduct some of the questioning of Noble.[2] Matthews was not licensed to practice law.

> Q: Now, your answers to the questions that are put to you could be used against you by this John Doe or in any other legal proceeding. Do you understand that?
>
> A: Yes.
>
> Q: If you testify falsely you could be criminally prosecuted for perjury or false swearing committed during your testimony before the John Doe proceeding. Do you understand that?
>
> A: Yes.
>
> Q: Now, there's several types of confidential communications that are privileged . . . . You can refuse to answer any question that's asked of you if it would require you to reveal conversations which are privileged under the law. Do you understand that?
>
> A: Yes, I do.
>
> Q: Do you understand that there are no other lawful grounds upon which you may refuse to answer questions before this John Doe proceeding?
>
> A: Yes.
>
> Q: Okay. I see that you have an attorney with you here today, and he will be present during your testimony. You may confer with your attorney during your testimony if you have any questions, if you want to talk to him. However, your attorney is not going to be allowed to ask you questions or cross-examine other witnesses or argue before the judge. Do you understand that?
>
> A: Yes, I do.

[2] The court stated:

> [The court]: All right. I'm going to permit other persons here to ask some questions of you to get to the facts which are sought to be disclosed here. Mr. Matthews then?
>
> [The prosecutor]: Yes, Your Honor. As we discussed earlier, Special Agent David Matthews from the Department of Justice will be conducting the examination. Sir.
>
> [Matthews]: Thank you.

213

¶ 6. Matthews asked Noble questions related to their April 9, 1999 conversation. During this questioning, Noble denied making statements to Matthews during the interview about the sale of drugs at Rowdy's Bar and about her husband's drug use.[3] Based on this alleged false testimony, Noble was charged with one count of perjury contrary to Wis. Stat. § 946.31(1)(a) (1999–2000).[4]

---

[3] The complaint provides several examples and states in part as follows:

> Your Complainant [Orlander] states that he was present during the examination of the defendant, which was conducted by Special Agent Matthews, and the defendant answered several questions untruthfully. Your Complainant states that some examples include:

> . . . .

> Q: Okay. My recollection was that you told us that Dan had ordered cocaine from Jean Boland a week prior to April 2nd and that on April 2nd he was there to pick up the drugs that he had ordered a week earlier. Do you deny telling us that?

> A: I don't know what you're talking about.

> Q: Do you deny telling us that?

> A: Yes.

[4] Wisconsin Stat. § 946.31(1)(a) states as follows:

Whoever under oath or affirmation orally makes a false material statement which the person does not believe to be true, in any matter, cause, action or proceeding, before any of the following, whether legally constituted or exercising powers as if legally constituted, is guilty of a Class D felony:

> (a) A court; . . . .

All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

¶ 7. Noble moved to suppress the transcript of the John Doe proceeding from her perjury prosecution and to dismiss the complaint against her with prejudice. She claimed that, pursuant to Wis. Stat. § 757.30,[5] which prohibits a person from practicing law without a license, it was unlawful for Matthews to represent the state in the proceeding. She contended that, because the state conducted the proceeding in an illegal manner, the transcript must be suppressed because the transcript is the "fruit of an illegal activity" committed by the state.

¶ 8. The Crawford County Circuit Court, Robert P. VanDeHey, Judge, denied the motion. The court noted that Judge Kirchman warned Noble before she testified at the John Doe that, if she testified falsely, she could be criminally prosecuted. Based on this warning, the court concluded that it did not make any difference as to who was asking the questions. The court also noted that the John Doe proceeding was conducted under Judge Kirchman's authority and that he specifically permitted Matthews to ask questions.

---

[5] Wisconsin Stat. § 757.30 states in relevant part as follows:

757.30 Penalty for practicing without license. (1) Every person, who without having first obtained a license to practice law as an attorney of a court of record in this state, as provided by law, practices law within the meaning of sub. (2), or purports to be licensed to practice law as an attorney within the meaning of sub. (3), shall be fined not less than $50 nor more than $500 or imprisoned not more than one year in the county jail or both, and in addition may be punished as for a contempt.

(2) Every person who appears as agent, representative or attorney, for or on behalf of any other person, or any firm, partnership, association or corporation in any action or proceeding in or before any court of record, court commissioner, or judicial tribunal of the United States, or of any state . . . shall be deemed to be practicing law within the meaning of this section.

¶ 9. A jury later convicted Noble on one count of perjury. Noble appealed this conviction.

¶ 10. The court of appeals, in a split decision, reversed Noble's conviction. *See State v. Noble,* 2001 WI App 145, 246 Wis. 2d 533, 629 N.W.2d 317. After rejecting other arguments presented by Noble, the court addressed whether the John Doe transcript should have been suppressed based on the judge's decision to permit the questioning by Matthews. On this issue, the court concluded that Matthews had engaged in the unlawful practice of law, contrary to Wis. Stat. § 757.30, and that the judge should not have permitted such conduct. *Id.* at ¶¶ 19–23. The question then became "whether there is a remedy for the State's use of an unlicensed person to examine witnesses at the John Doe investigation, and if so, what that remedy should be." *Id.* at ¶ 24.

¶ 11. The court concluded that some type of sanction was required, noting that the unauthorized practice of law was a significant violation and that, if such conduct was authorized by the state, it would be unlikely that the state would then prosecute such conduct. *Id.* Therefore, the court determined that "[t]he only effective remedy for the use of unauthorized persons in John Doe investigations is to prohibit the State from profiting from the abuse." *Id.* at ¶ 27. To this end, the court concluded that, when an unlicensed person examines a witness at a John Doe investigation, the proper sanction would be exclusion of a witness's testimony. *Id.* at ¶ 30. This sanction, the court noted, "properly balances the right of the State to investigate allegations of criminal conduct with the prohibitions against the unauthorized practice of law." *Id.* In turn, the court reversed Noble's conviction and remanded for a new trial, with the condition that, if Noble were re-tried, the

circuit court would be required to exclude the information obtained by the state's unauthorized practice of law. *Id.*

¶ 12. Judge Roggensack dissented, partially based on her contention that suppression of the evidence was not an appropriate sanction in this case. *Id.* at ¶ 34 (Roggensack, J., dissenting). In short, she stated that the majority's decision was "contrary to long-standing precedent," holding that suppression of evidence is applicable " 'only where the evidence sought to be excluded was obtained in violation of a constitutional right or a statute that specifically requires suppression of wrongfully or illegally obtained evidence as a sanction.' " *Id.* at ¶¶ 34–35 (quoting *State ex rel. Peckham v. Krenke,* 229 Wis. 2d 778, 787, 601 N.W.2d 287 (Ct. App. 1999)). The State appealed.

II

¶ 13. The sole issue on review is whether testimony provided by Noble during the John Doe proceeding should be suppressed from her subsequent perjury prosecution based on the allegation that the state abused the proceeding by permitting her examination to be unlawfully conducted by Matthews, a state agent who was not authorized to practice law. Noble contends that such abusive conduct warrants suppression because such conduct constitutes a violation of her constitutional right to due process. Alternatively, she argues that, even if a constitutional violation did not occur, suppression is still required because it is an appropriate sanction for such abusive conduct. We conclude that the suppression of Noble's testimony is not required in this case. It is not required because Matthews' examination of Noble during the John Doe proceeding did not amount to either a constitutional

violation or a statutory violation for which suppression is provided as a remedy. We find no other basis for suppressing this evidence. As a result, we disagree with the court of appeals' decision to suppress Noble's testimony, and accordingly, we reverse the court's decision overturning Noble's conviction.

## III

¶ 14. We assume, for purposes of this case, that Matthews' conduct constituted the unauthorized practice of law, contrary to Wis. Stat. § 757.50. Thus, the question becomes whether the testimony provided by Noble should be suppressed based on the state's use of Matthews during the John Doe proceeding. Recently, we noted that "[s]uppression is only required when evidence has been obtained in violation of a defendant's constitutional rights or if a statute specifically provides for the suppression remedy." *State v. Raflik,* 2001 WI 129, ¶ 15, 248 Wis. 2d 593, 636 N.W.2d 690 (citation omitted). In this case, Noble concedes that her testimony was not obtained in violation of a statute that specifically provides suppression as a remedy. Instead, she contends that this testimony was obtained in violation of her constitutional right to procedural due process. Noble asserts that this violation is evidenced by the conduct of the state at her John Doe proceeding, considering the rights and protections afforded to witnesses appearing during such proceedings.

¶ 15. Noble first argues that a witness at a John Doe proceeding, who is also the target of the investigation, has a right to due process protections, including protection from the prosecutor using the proceeding to elicit incriminating testimony from the target witness. In this case, Noble acknowledges that the state identified Arlene Melvin as the target of the investigation.

However, Noble contends that the proceeding was actually conducted as a means to gather incriminating evidence against Noble and others. The nature of the questioning, she asserts, went beyond the subject matter for which the proceeding was commenced and revealed that she was the target of the investigation. Specifically, Noble points to questions about her own drug use, which she contends had nothing to do with the investigation of Melvin.[6] Noble contends that, by using the proceeding in this manner, the state violated the due process safeguards provided to John Doe witnesses who are also the target of the investigation.

¶ 16. Second, Noble argues that a witness at a John Doe proceeding has a right to be questioned by a licensed attorney to ensure that the questioning is conducted in a competent and ethical manner. Noble notes, citing Wis. Stat. § 978.05(3), that prosecutors have an obligation to participate in John Doe proceed-

---

[6] During the John Doe proceeding, the following exchange occurred between Matthews and Noble:

Q [Matthews]: Do you recall telling me that Becky had shared cocaine with you on July 4th of 1998?

A [Noble]: Yes, I deny that.

Q: You deny telling me that?

A: Yes.

Q: I'm sorry, '98, thank you. That would have been July 4th of 1998, do you deny telling me that?

A: I don't do drugs, so - -

Q: Have you ever done drugs?

A: No, I have not.

Q: You've never used cocaine?

A: No.

ings and also argues, citing *State v. O'Connor,* 77 Wis. 2d 261, 281–82, 252 N.W.2d 671 (1977), that law enforcement officers are permitted to attend such proceedings only under exceptional circumstances. In this case, however, examination responsibilities were delegated to Matthews, a state agent who was not licensed to practice law. Noble argues that this conduct violated both the strict limitations of John Doe proceedings and the statutory prohibition against the unauthorized practice of law, Wis. Stat. § 757.30(1). Such conduct, she alleges, injects the very danger of inadequate and unethical representation by nonlawyers that the unauthorized practice of law statute is intended to prevent. Noble also points out that Matthews was not bound by the rules of professional responsibility and, if he was, he would have violated these rules because his questions incorporated his direct knowledge of the facts, thereby improperly acting as both advocate and witness in the same proceeding in violation of Wisconsin Supreme Court Rule 20:3.7.[7] Noble contends that the state's use and authorization of Matthews to question her resulted

---

[7] Wisconsin Supreme Court Rule 20:3.7 states that, with some exceptions, "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness . . . ." The comment to this rule explains the basis for the rule:

> The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

Noble points to the following questions asked by Matthews during the John Doe proceeding:

> Q: Okay. My recollection and my notes of that day indicate your telling us, in addition to the other things that you have just denied,

in an unfair and oppressive examination, thereby violating her due process rights.

¶ 17. Third and finally, Noble contends that a witness at a John Doe proceeding has the right to a neutral and detached magistrate and that the judge must insure that the witness is treated fairly and protected from oppressive prosecutorial tactics. Noble contends that, despite this obligation, Judge Kirchman permitted Matthews to unlawfully question her during the John Doe proceeding. She asserts that the judge essentially conspired with the prosecutor and Matthews to allow Matthews to question her in violation of the law.

¶ 18. Thus, on the whole, Noble argues that, by allowing Matthews to conduct her examination, the state ignored the strict limitations of John Doe proceedings and the requirements of the unauthorized practice of law statute. This conduct resulted in an unfair examination that violated her due process rights. Accordingly, suppression of her testimony was required in her perjury prosecution. We disagree.

---

my notes indicate that you told us that [Jean Boland] offered to sell [Dan Noble] two eight balls of cocaine. Do you deny that knowledge?

. . . .

Q: It's my notes and recollection also that before the relationship was established with Jean [Boland] and her daughter Bobbie Serrano, that Dan was getting his cocaine from Arlene Melvin. Do you recall that now or do you deny telling us that?

. . . .

Q: And because today you've answered questions concerning events I was present for and therefore know that your answers have not been truthful, I'm concerned that someone may have threatened you with respect to today's testimony. Have you or Dan received any threats regarding today's testimony?

¶ 19. Certainly, fair play underpins the concept of due process of law. *State ex rel. Lyons v. De Valk,* 47 Wis. 2d 200, 205, 177 N.W.2d 106 (1970). Governmental conduct violates such notions of fundamental fairness when the conduct is " 'shocking to the universal sense of justice . . . .' " *State v. Hyndman,* 170 Wis. 2d 198, 208–09, 488 N.W.2d 111 (Ct. App. 1992) (quoting *U.S. v. Russell,* 411 U.S. 423, 432 (1973)); *see also State v. Steadman,* 152 Wis. 2d 293, 300–02, 448 N.W.2d 267 (Ct. App. 1989). On a motion to suppress, the defendant generally bears the burden of producing evidence to support a constitutional violation. *State v. Jackson,* 229 Wis. 2d 328, 336, 600 N.W.2d 39 (Ct. App. 1999). The state then bears the burden of showing a constitutionally valid procedure by a preponderance of the evidence. *See Raflik,* 2001 WI 129, ¶ 55. We review the application of constitutional principles to the facts de novo. *See Hyndman,* 170 Wis. 2d at 207.

¶ 20. We conclude that the facts in this case do not support a finding of a due process violation. Our conclusion is based on several reasons.

¶ 21. First, under the current facts, there is no support for Noble's contention that she was the target of any investigation and that the state used the John Doe proceeding as a means of obtaining incriminating evidence against her as the target of the investigation. Certainly, there are limitations to the use of John Doe proceedings. In particular, "a John Doe proceeding cannot be used to obtain evidence against a defendant for a crime *with which the defendant has already been charged.*" *State v. Cummings,* 199 Wis. 2d 721, 745, 546 N.W.2d 406 (1996) (emphasis added). In this respect,

222

the prosecution cannot use a John Doe proceeding to aid in preparing its case. *Id.; see also State ex rel. Reimann v. Circuit Court for Dane County,* 214 Wis. 2d 605, 622, 571 N.W.2d 385 (1997) (citing *State v. Washington,* 83 Wis. 2d 808, 824, 266 N.W.2d 597 (1978)). Such conduct constitutes an abuse of the procedure. *Id.* at 746; *see also State v. Hoffman,* 106 Wis. 2d 185, 205, 316 N.W.2d 143 (Ct. App. 1982).

¶ 22. This case does not involve a situation where there was a criminal complaint filed against Noble before she appeared at the John Doe proceeding. Therefore, the concerns discussed in *Cummings* are not implicated. Noble contends that she became the target of the investigation when some of the questions posed by Matthews concerned her drug activity directly, instead of the drug activity of Melvin or other defendants. We recognize that the John Doe proceeding is "essentially limited to the subject matter of the petition filed under Wis. Stat. § 968.26." *State ex rel. Reimann,* 214 Wis. 2d at 622 (citing *Washington,* 83 Wis. 2d at 822). However, this brief questioning, which was enumerated under footnote 6 of this opinion, did not transform Noble into the target of the investigation nor create a situation where the state was using the John Doe proceeding to improperly build a case against Noble after she had already been charged. Matthews asked these questions only after he asked numerous other questions surrounding drug activity, which did not involve Noble, at Rowdy's Bar. Noble denied knowledge of such activity, contradicting her previous statements to Matthews. Matthews then briefly questioned Noble about her own drug activity, apparently not as a means to ferret out her criminal activity, but instead to determine the extent to which Noble would deny her prior

statements to Matthews. Again, this brief questioning did not transform Noble into the target of the investigation.

¶ 23. Further, this is not a case where the state is prosecuting the defendant based on incriminating statements concerning his or her illegal activity obtained during the John Doe proceeding. Instead, it is prosecuting her based on her failure to give truthful testimony during the John Doe proceeding. Indeed, even if Noble was being prosecuted based on any alleged incriminating testimony, the state's prosecution of her based on this testimony is lawful in light of the procedural protections afforded to witnesses at John Doe proceedings. *See Ryan v. State,* 79 Wis. 2d 83, 96, 255 N.W.2d 910 (1977). We cannot conclude that the proceeding was abused in this instance to support a violation of due process.

¶ 24. Second, even assuming that Matthews engaged in the unauthorized practice of law, there is nothing in his examination of Noble to show that his participation resulted in a proceeding that was particularly unfair and oppressive in nature. Law enforcement agents are not, as Noble contends, restricted to attending John Doe proceedings in only exceptional circumstances. Noble relies on *O'Connor,* 77 Wis. 2d 261, for this contention. However, *O'Connor,* like this case, involved a secret John Doe proceeding. Even under such circumstances, it is still within the judge's discretion whether to allow, upon the prosecutor's request, law enforcement agents to attend and assist in the proceeding. *Id.* at 281. The judge must be persuaded, however, that the law enforcement agent will make a material contribution to the proceedings, otherwise the

judge should not allow the agent to attend in the interest of the secrecy of the proceeding. *Id.* at 282. The *O'Connor* court warned judges not to abuse this practice. *Id.* However, the concern in *O'Connor* was to preserve the secrecy of the proceedings by limiting the number of people at the proceeding. It was not focused on the extent to which an agent participated in the proceeding once the judge allows the agent to attend. Matthews was able to attend and even confer with the district attorney during the John Doe proceeding. Thus, his examination of Noble was not as drastic a step beyond his permissible duties as Noble contends.

¶ 25. Further, even in cases that have presented instances of the unauthorized practice of law, the acts themselves have been regarded as valid. *See Drugsvold v. Small Claims Court,* 13 Wis. 2d 228, 233, 108 N.W.2d 648 (1961). Thus, even if Matthews was an invalid participant, his questions—and the answers to these questions—are not necessarily void. In addition, Noble does not explain how Matthews' questions themselves resulted in an unfair and oppressive examination. There was nothing inherently unfair that Noble identifies about the questions. Noble points to SCR 20:3.7, but, as the State contends, the rule limits such conduct only at trial. Further, Matthews' questioning was supervised by the prosecutor and the judge and observed by Noble's attorney, who was present in the courtroom, and could have advised Noble not to answer any unfair questions. Finally, any policy considerations behind the unauthorized practice of law only implicate the public in this case, not Noble. Certainly, the public may be harmed when prosecutors rely on persons who are not licensed attorneys to appear on behalf of the state.

However, there is no evidence to show that Noble suffered from any representation of the state by Matthews in this case.[8]

---

[8] In other jurisdictions, in cases involving the prosecution of a defendant by an unlicensed attorney, courts have similarly found that no due process violation was present. *See* Andrew Horwitcz, *Taking the Cop Out of Copping a Plea: Eradicating Police Prosecution of Criminal Cases,* 40 Ariz. L. Rev. 1305, 1350–54 (1998). The author argues, however, that the analyses supporting these decisions were flawed and that a due process right to be prosecuted by a licensed attorney should be recognized. *Id.*

In his article, the author also noted several cases in which courts have held, without finding a due process violation, that a defendant's conviction is void when the prosecution is undertaken by an unlicensed person, including *State v. Russell,* 83 Wis. 330, 53 N.W. 441 (1892). In *Russell,* the court appointed an attorney who was not licensed in Wisconsin to assist the district attorney in prosecuting a first-degree murder trial. *Id.* at 331. The unlicensed attorney, the court noted, practically controlled the management of the trial, including examining witnesses. *Id.* The court concluded:

> [The defendant] certainly had a right to be prosecuted by the lawfully elected or appointed officers of the law. That right was violated. She ought not to have been compelled to submit to such a trial. She has suffered all the terrible consequences of an illegal trial and conviction for murder in the first degree. She was, of course, prejudiced by it. The error is material.

*Id.* at 335. Thus, the *Russell* court recognized that a defendant has a right to be prosecuted by a licensed attorney and that, if this right is violated, the court must conduct a harmless error analysis to determine whether the error was prejudicial to the defendant. In Noble's case, however, it was not her trial that was conducted by an unlicensed person; it was her examination at a John Doe hearing. Even if she had a right to be examined by a licensed attorney during this proceeding, we do not find that the violation of this right in this case was sufficient to

¶ 26. Third, although we recognize that Noble was entitled to a neutral and detached magistrate at her proceeding, *Washington,* 83 Wis. 2d at 833, 835–36, there is no evidence to suggest that Judge Kirchman acted partially by permitting Matthews to conduct the examination of Noble. Whether a judge's impartiality can be reasonably questioned, based on an objective test, is a question of law for our de novo review. *State v. Walberg,* 109 Wis. 2d 96, 105, 325 N.W.2d 687 (1982). We acknowledge that Judge Kirchman should have recognized that the examination by Matthews, who was not licensed to practice law, presented a problem. However, there is nothing in the record to suggest that the judge did not abide by his responsibilities in acting as a neutral and detached magistrate. We therefore find this due process argument without merit.

¶ 27. On the whole, the arguments presented by Noble do not support a finding that the state's conduct at the John Doe proceedings constituted an abuse of the proceedings sufficient to constitute a due process violation. As a result, suppression is not warranted based on a constitutional violation.

■

¶ 28. Noble argues that, even if a constitutional violation did not exist, we should still suppress her testimony because it is the only remedy that will serve to deter such abuse of the John Doe proceedings by the state. She contends that, in both *Cummings* and *Hoffman,* the court recognized that suppression is required when such abuse occurs, even though no constitutional

---

constitute a constitutional violation requiring suppression or that this violation caused Noble to suffer any prejudice in this case.

violation has occurred. As discussed above, however, the type of abuse contemplated by *Cummings* and *Hoffman* was not present in this case. In turn, these cases do not compel us to suppress the evidence in this case. Further, we do not interpret *Cummings* and *Hoffman* as creating an exception to the general rule, which requires—in the absence of a statutory violation providing for suppression as a remedy—a constitutional violation before suppression will be invoked. The court did not find, in either case, an actual abuse of the John Doe proceeding. *See Cummings,* 199 Wis. 2d at 745–47; *Hoffman,* 106 Wis. 2d at 206–07. Nevertheless, as mentioned previously, both courts noted that suppression is required in instances where the state abuses the John Doe proceeding by using the proceeding to gather evidence "against a defendant for a crime with which the defendant has already been charged." *Cummings,* 199 Wis. 2d at 745. "Such use is clear abuse of the process." *Id.* The court never discussed whether such abuse constitutes a violation of due process; however, the terse conclusion reached by the court that such conduct is "clear abuse" suggests that such conduct could rise to the level of a due process violation. Thus, we do not conclude that *Cummings* and *Hoffman* necessarily created any exception to the general rule, and we do not create one in this case.

¶ 29. Our conclusion that suppression is not warranted in this case is also based on two additional reasons. First, in this case, the evidence used by the state in Noble's perjury prosecution was not the "fruit" of any "poisonous tree." To be sure, in cases where there has been a violation of a constitutional right, evidence obtained as a direct result of the illegal conduct is inadmissible as well as derivative evidence if this evi-

dence is obtained " 'by exploitation of that illegality.' " *State v. Schneidewind,* 47 Wis. 2d 110, 118, 176 N.W.2d 303 (1970) (quoting *Wong Sun v. U.S.,* 371 U.S. 471 (1963)). In such cases, evidence is admissible only when it has been obtained by exploitation of the illegality, and not when it is obtained by means sufficiently distinguishable that it is purged of the primary taint. *State v. Phillips,* 218 Wis. 2d 180, 206, 577 N.W.2d 794 (1998). If there is a close causal connection between the illegal conduct and the evidence obtained, the evidence is inadmissible. *State v. Kraimer,* 91 Wis. 2d 418, 433, 283 N.W.2d 438 (Ct. App. 1979).

¶ 30. In Noble's case, however, we are examining a statutory violation, not a constitutional violation. Thus, a "fruit of the poisonous tree" analysis is not wholly applicable. Nevertheless, the relevant evidence in this case (testimony showing that Noble lied under oath) was not generated by any illegal activity by the state (allowing Matthews to examine Noble). Noble's answers to the questions likely would have been the same regardless of who was asking the questions. Thus, this lack of a close causal connection between the evidence and the illegal activity supports our conclusion that suppression is not necessary because the evidence would have been likely obtained regardless of the illegal activity.

¶ 31. Second, the policy considerations warranting suppression are not present in this case. Two important policy suppression considerations are deterrence of police misconduct and maintenance of judicial integrity. Suppression will not necessarily serve as a deterrent to future unlawful questioning by unlicensed agents. There is no evidence to show that this activity occurs on a regular basis so that suppression would have an effect on such questioning by agents. Further,

suppression may encourage perjury in those rare instances where agents undertake such questioning. The integrity of the judiciary is also not threatened by declining to suppress this evidence. There is nothing to suggest that the judge acted in bad faith in allowing the agent to ask questions. Indeed, the judge took significant steps in this case to insure that Noble understood her rights and the ramifications of providing false testimony. If anything, suppression will only serve to threaten judicial integrity by condoning perjured testimony. Thus, we do not find that policy considerations support suppression in this case.

IV

¶ 32. In sum, we conclude that, even assuming that the unauthorized practice of law was present in this case, suppression is not a valid remedy in this instance. We therefore reverse the decision of the court of appeals and conclude that Noble's perjury conviction should be reinstated.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 33. DAVID T. PROSSER, J. *(concurring)*. I join the mandate and opinion of the court but write separately because of several sentences in ¶ 28 of the majority opinion.

¶ 34. The opinion discusses two cases, *State v. Cummings,* 199 Wis. 2d 721, 546 N.W.2d 406 (1996), and *State v. Hoffman,* 106 Wis. 2d 185, 316 N.W.2d 143 (Ct. App. 1982), indicating that in neither case did the court find "an actual abuse of the John Doe proceeding." Then the opinion states:

> Nevertheless, as mentioned previously, both courts noted that suppression is required in instances where

230

the state abuses the John Doe proceeding by using the proceeding to gather evidence "against a defendant for a crime with which the defendant has already been charged." "Such use is clear abuse of the process." The court never discussed whether such abuse constitutes a violation of due process; however, the terse conclusion reached by the court that such conduct is "clear abuse" suggests that such conduct could rise to the level of a due process violation.

Majority op. at ¶ 28 (citations omitted).

¶ 35. First, these cases do not require automatic suppression of all evidence gathered in a John Doe proceeding against a charged defendant. These cases stand for the proposition that the state may not orchestrate a John Doe proceeding to obtain additional evidence "against a defendant for a crime with which the defendant has already been charged." *Cummings,* 199 Wis. 2d at 745. The state may still use a John Doe to "(1) investigate other possible defendants related to the crimes that will be charged in the information filed against the original defendant, and (2) investigate other crimes that cannot be charged in the information, but may have been committed by the defendant." *Id.* at 745–46. "It is only when the John Doe is used to gather evidence specifically relating to the crime for which the defendant is being tried that an abuse of the procedure occurs." *Id.* at 746.

¶ 36. In my view, this opinion does not settle the question whether evidence uncovered in a John Doe proceeding focusing on one person may be used in a trial against another person on a charge filed against that person before the new evidence was obtained.[1]

---

[1] In his oft-quoted dissent in *State ex rel. Kowaleski v. District Court,* 254 Wis. 363, 375, 36 N.W.2d 419 (1949), Justice Henry Hughes stated: "Certainly where [the magistrate] issues

¶ 37. Second, I do not see how due process violations would be implicated by the use of a John Doe-type proceeding to gather additional evidence against a charged defendant even on the crime charged, so long as the defendant is not asked to testify. A John Doe investigation does not come to an abrupt halt the moment the prosecutor has gathered enough evidence to file a criminal charge. It usually continues until all key witnesses have been examined, and then a charge is filed. Moreover, at a preliminary examination after the charge is filed, new evidence may be sought and adduced; and that evidence may be used against the defendant.[2]

¶ 38. The prosecutor and the police do not stop investigating a crime once a defendant has been charged with the crime. The state has the burden of proving each element of the crime beyond a reasonable doubt. It is inconceivable that the state would stop

a warrant he cannot continue a hearing as an aid to the district attorney in preparing the prosecution." But Justice Hughes went on to say: "If a *bona fide* John Doe proceeding were necessary to investigate other crimes . . . and the defendant were not named as a party, but evidence came out against him incidental to such investigation, he would have no cause for complaint." *Id.* at 376.

More than 30 years later in *State v. Hoffman,* 106 Wis. 2d 185, 205, 316 N.W.2d 143 (Ct. App. 1982), Judge Dykman observed that: "Federal courts have held that a grand jury may inquire into matters which are the subject of a pending prosecution so long as that is not the dominant or primary purpose of the inquiry." He cited *United States v. Gibbons,* 607 F.2d 1320, 1328 (10th Cir. 1979).

[2] In civil cases, litigants expect sworn testimony to be taken from witnesses in depositions after a complaint is filed but before trial. *See* Wis. Stat. §§ 804.05 and 804.06.

gathering information and evidence to meet its burden of proof once a charge had been filed. The state may also have to continue investigating to meet its discovery obligations.

¶ 39. One may argue persuasively that the John Doe proceeding is intended to ascertain whether a crime has been committed and, if so, by whom, and is not intended to help firm up the case against a charged defendant. But how would the use of an authorized John Doe-type proceeding to take testimony from potential witnesses against the defendant be fundamentally unfair or violate the due process rights of the defendant? Under Wis. Stat. § 971.23(1), the state would be required to disclose any of the defendant's oral statements about the crime that it learned of in the proceeding, the names of any witnesses whom the prosecutor intended to call at trial, together with a transcript of John Doe-type testimony, and any exculpatory evidence that came out of the proceeding.

¶ 40. Today, John Doe proceedings are usually less secretive and more fair than they once were. This court should not invite suppression of reliable evidence in criminal cases by allusions to due process violations based upon outmoded notions of past practice.

¶ 41. I am authorized to state that JUSTICE DIANE S. SYKES joins this concurring opinion.

¶ 42. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting).* The court of appeals concluded that the state narcotics enforcement special agent who represented the State in the John Doe proceeding by questioning the defendant (who was a witness at the John Doe proceeding) was practicing law without a

license, a criminal offense.[1] Indeed, the special agent was both an advocate and witness in the proceeding. The court of appeals further concluded that the appropriate remedy was to exclude the information obtained by the State's unauthorized practice of law if the defendant is retried.

¶ 43. I am persuaded by the reasoning and conclusions of the court of appeals.[2] The special agent was not a lawyer and falls under none of the authorized exceptions for the practice of law by non-lawyers. The defendant was never charged for drug offenses, which were the subject of the John Doe proceeding, and the special agent's unlawful practice of law yielded the perjury charge against the defendant. Wisconsin courts should not be partners to the unlawful practice of law in a criminal case.

¶ 44. Although not presenting precisely the same facts as those here, several cases are sufficiently similar to support the reasoning and conclusions of the court of appeals in the present case.

¶ 45. In *State v. Russell*, 83 Wis. 330, 53 N.W. 441 (1892), a Minnesota attorney, not licensed in Wisconsin, assisted the district attorney in the prosecution of a criminal case. The Minnesota attorney was appointed by the Wisconsin district attorney and was competent. The court declared, as it has in numerous cases there-

---

[1] Wis. Stat. § 757.30 (1999–2000) (every person practicing law without a license shall be fined not less than $50 nor more than $500 or imprisoned not more than one year in the county jail or both, and in addition may be punished as for contempt).

[2] *State v. Noble,* 2001 WI App 145, 246 Wis. 2d 533, 629 N.W.2d 317.

after,[3] that the district attorney `is a constitutional officer in Wisconsin, a "quasi judicial officer," an attorney with special responsibilities and powers, and no attorney or non-attorney can substitute for the district attorney unless authorized by statute.[4] A person not licensed to practice law in this state is not considered an attorney in Wisconsin. The *Russell* court held that the error of having a Minnesota attorney replace the district attorney was material and prejudicial and that the conviction must be reversed.

¶ 46. In *Biemel v. State,* 71 Wis. 444, 37 N.W. 244 (1888), and *State v. Peterson,* 195 Wis. 351, 218 N.W. 367 (1928), private counsel licensed to practice in Wisconsin assisted the district attorney in prosecuting the respective criminal cases, either before or during trial.[5] In both cases, the court concluded that "public policy, and the fair, just, and impartial administration of the criminal law of the state, make it the duty of the courts to exclude the paid attorneys of private persons from appearing as prosecutors."[6] The convictions in both cases were reversed.

¶ 47. The *Russell, Biemel,* and *Peterson* cases stand for the proposition that when someone other than

---

[3] *See, e.g., County of Kenosha v. C&S Mgmt., Inc.,* 223 Wis. 2d 373, 400, 588 N.W.2d 236 (1999); *State v. Hooper,* 101 Wis. 2d 517, 531 n.9, 305 N.W.2d 110 (1981), and cases cited therein.

[4] *State v. Russell,* 83 Wis. 330, 334, 53 N.W. 441 (1892).

[5] In *Schedlberger v. State,* 204 Wis. 235, 235 N.W. 419 (1931), this court held that no error occurred when nothing in the record demonstrated that the Chicago attorney rendered any material aid to the district attorney in preparing the case for trial or that the Chicago attorney was present at the trial.

[6] *State v. Peterson,* 195 Wis. 351, 356–57, 218 N.W. 367 (1928), quoting *Biemel v. State,* 71 Wis. 444, 446, 37 N.W. 244 (1888).

a district attorney (or a person authorized by statute) exercises the functions of a district attorney, the criminal proceedings are void. In the present case, the special agent who acted as counsel at the John Doe proceeding was neither an attorney, nor the district attorney, nor a person identified by statute or case law as authorized to substitute for a district attorney. Relying on the *Russell, Biemel,* and *Peterson* cases, I conclude that this conviction based on a non-attorney substituting for the district attorney cannot stand.

¶ 48. I write separately to also point out that various cases relating to the unauthorized practice of law do not seem to be readily reconcilable. In civil cases, even though a non-lawyer engages in the unauthorized practice of law, the civil judgment apparently is not void.[7] Yet in *Jadair Inc. v. United States Fire Ins. Co.,*

---

In *Peterson* a private attorney who was paid by private persons summoned prospective witnesses, questioned them, and prepared memoranda for the district attorney's use at trial. *Peterson,* 195 Wis. at 354.

[7] *See, e.g., Littleton v. Langlois,* 37 Wis. 2d 360, 364, 155 N.W.2d 150 (1967) (plaintiff's wife appeared as witness, not advocate, during litigation, and even if her appearance constituted the unauthorized practice of law, the judgment would not be void); *In re McManus,* 13 Wis. 2d 228, 233–34, 108 N.W.2d 648 (1961) (statute making unauthorized practice of law illegal does not make acts complained of void and appearance by lay employee of collection agency on behalf of plaintiff in suit commenced by collection agency does not strip court of jurisdiction, even if such appearance amounted to the unauthorized practice of law).

A John Doe proceeding is not a criminal proceeding. *State v. Brady,* 130 Wis. 2d 443, 449, 388 N.W.2d 151 (1986). A John Doe proceeding is, however, intimately related to a criminal prosecution.

209 Wis. 2d 187, 562 N.W.2d 401 (1997), this court ruled that a notice of appeal in a civil case signed by a non-lawyer on behalf of a corporation is void, and the court of appeals lacks jurisdiction to hear the appeal. In *Schaefer v. Riegelman,* 2002 WI 18, 250 Wis. 2d 494, 639 N.W.2d 715, this court dismissed a civil complaint with prejudice, throwing a case out of court, because the summons and complaint were signed by an attorney licensed in Minnesota on behalf of an attorney licensed in Wisconsin.

¶ 49. *Jadair, Schaefer,* and the present case seem incongruent. In *Schaefer* and *Jadair,* the court is unforgiving when a non-Wisconsin lawyer signs preliminary documents on behalf of a client. The result in those cases: final dismissal of a case and of an appeal. In the present case, this court imposes no sanction when, in a Wisconsin courtroom, a non-lawyer is permitted to perform the functions of a district attorney at the behest of the State. The effect of the unauthorized practice of law on the outcome of civil and criminal proceedings is apparently a work in progress by this court—and from my perspective, needs more work and more progress.

¶ 50. For the reasons set forth, I dissent.