State of Wisconsin, Plaintiff-Respondent,
v.
Raymond W. Lyght, Defendant-Appellant.
No. 2004AP2877-CR.
Court of Appeals of Wisconsin.
Opinion Filed: April 21, 2005.
¶1 DYKMAN, J.[1]
Raymond W. Lyght appeals from a judgment of conviction for operating a motor vehicle while intoxicated (OWI)second offense. The trial court denied Lyght's motion to suppress evidence gathered during a traffic stop. Because we conclude that the officer's justification for stopping Lyght relied on a mistaken view of the law, we reverse.

Background
¶2 In the early morning hours of August 16, 2003, Deerfield Police Officer Matthew Ritzema sat in his parked squad car near the intersection of Park Drive and West Deerfield Street in Deerfield. Park Drive is a one-block street connecting West Deerfield Street and West Nelson Street, and was at that time unpaved and under construction. Traffic barriers across West Deerfield Street and Park Drive carried signs stating "Road Closed Ahead Local Traffic Only." The barriers were positioned so that a driver would have to cross into the oncoming traffic lane to access Park Drive. The road closed signs were not equipped with lights. Ritzema testified that he was monitoring Park Drive because the company carrying out the roadwork had complained that many drivers were using Park Drive despite the signs. Ritzema had issued warnings to several drivers that night.
¶3 At 2:24 a.m., Ritzema saw a vehicle turning onto West Deerfield Street. The vehicle went around a barrier and a "Road Closed" sign and turned onto Park Drive. Ritzema started his car and began to follow the vehicle. The vehicle continued to the end of Park Drive and turned onto West Nelson Street. Ritzema then activated his emergency lights and stopped the vehicle. During the course of the traffic stop, Ritzema observed that the driver, Raymond Lyght, had difficulty removing his driver's license from his wallet, that his eyes were bloodshot and his speech was slurred, and that he was emitting an odor of intoxicants. Ritzema performed field sobriety tests on Lyght and eventually arrested him for operating while intoxicated.
¶4 Lyght filed a pretrial motion to suppress the evidence gathered during the stop, claiming a violation of his Fourth Amendment rights. Lyght contended that the signs posted at either end of the construction site were not legally sufficient to close the road or to require motorists to abide by them. Since he had broken no law in driving on Park Drive, Lyght argued, Ritzema lacked reasonable suspicion to pull him over. The circuit court denied Lyght's motion. Lyght appeals.

Discussion
¶5 Lyght argues that the road closed sign he disregarded did not meet the statutory standards that would give it the force of law, and therefore, he could not lawfully be stopped. The State does not contend that Lyght's use of Park Drive was illegal, but instead argues that officer Ritzema could reasonably have suspected that it was, and that the stop was therefore proper. The parties' disagreement involves an area of search and seizure law that has developed only within the past decade: the constitutional significance of a police officer's mistaken interpretations of fact and law.
¶6 The Fourth Amendment of the United States Constitution protects "[t]he right of the people ... against unreasonable searches and seizures." U.S. CONST. amend. IV. Courts enforce this rule by excluding evidence derived from searches or seizures found to be unreasonable. Mapp v. Ohio, 367 U.S. 643, 655 81 S. Ct. 1684 (1961). A temporary investigative detention such as a traffic stop is a seizure under the Fourth Amendment. Terry v. Ohio, 392 U.S. 1, 19, 88 S. Ct. 1868 (1968). To be permissible, a traffic stop must generally be justified by reasonable suspicion that a violation has been or will be committed. State v. Gaulrapp, 207 Wis. 2d 600, 605, 558 N.W.2d 696 (Ct. App. 1996).
¶7 Reasonable suspicion is an objective standard. In reviewing traffic stops, courts do not inquire into an officer's actual state of mind; instead, they determine whether the facts available to the officer could arouse suspicion in a reasonable person. State v. Waldner, 206 Wis. 2d 51, 60, 556 N.W.2d 681 (1996); Whren v. U.S., 517 U.S. 806, 813, 116 S. Ct. 1769 (1996). Because the task of investigation and law enforcement requires the use of judgment in ambiguous situations, detention based upon mistaken beliefs is not necessarily unlawful. Illinois v. Rodriguez, 497 U.S. 177, 185-86, 110 S. Ct. 2793 (1990) ("[I]n order to satisfy the `reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government ... is not that they always be correct, but that they always be reasonable.").
¶8 However, courts have recently begun to draw distinctions between an officer's mistakes of fact and his or her mistakes of law. The Wisconsin courts were among the first to consider the question, in State v. Longcore, 226 Wis. 2d 1, 594 N.W.2d 412 (Ct. App. 1999), aff'd by an equally divided court, 2000 WI 23, 233 Wis. 2d 278, 607 N.W.2d 620.
¶9 In Longcore, an officer stopped the defendant's vehicle after noticing that its rear window was missing and had been replaced with clear plastic sheeting. Id. at 4. During the stop, the officer determined that Longcore's license had been revoked. Id. at 3.
¶10 Longcore moved to suppress the evidence gathered during the stop, claiming that Wisconsin law did not prohibit the use of plastic sheeting in an automobile window. Id. at 9. The circuit court rejected the motion, finding that the relevant statute was ambiguous,[2] that the officer's interpretation of the statute was reasonable, and that given this interpretation, the officer could reasonably suspect that Longcore was in violation. Id. at 5.
¶11 We reversed and remanded. We rejected the idea that reasonable suspicion could "extend beyond the relation of articulable facts to the law and encompass an officer's reasonable suspicion of what the law is." Id. at 6. The court held that under Article I, section 11 of the Wisconsin Constitution, "when an officer relates the facts to a specific offense, it must indeed be an offense; a lawful stop cannot be predicated upon a mistake of law."[3]Id. at 9.
¶12 The Longcore court based its ruling on the Wisconsin Constitution, and at the time it was decided, there was little authority on whether the Fourth Amendment offered similar protection. Since that time, though, the issue has been raised repeatedly, and while the United States Supreme Court has yet to address the question, several federal appellate courts have held that under the Fourth Amendment, lawful stops cannot be predicated on mistaken views of the law. See U.S. v. Miller, 146 F.3d 274, 279 (5th Cir. 1998); U.S. v. Lopez-Soto, 205 F.3d 1101, 1106 (9th Cir. 2000); U.S. v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2003). This rule is supported by two rationales. First, reasonable suspicion is an objective test. An officer's mistaken view of the law cannot justify reasonable suspicion because it is inherently subjective; what the officer incorrectly believes the law to be is simply irrelevant to determining whether reasonable suspicion exists. Miller, 146 F.3d at 279. Second, the purpose of the exclusionary rule is to deter violations of Fourth Amendment rights. This purpose is obviously not served if the courts admit evidence based upon a law enforcement official's failure to know the law. Lopez-Soto, 205 F.3d at 1106 ("To create an exception here would defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey.").
¶13 We must therefore decide whether Officer Ritzema was correct in believing that it was illegal to drive on Park Drive. If he was incorrect, Lyght's stop was unsupported by reasonable suspicion, and his conviction must be overturned.
¶14 Two different statutes apply to the sign here. WISCONSIN STAT. § 86.06 allows the authorities in charge of a road construction project to close a road by erecting signs.[4] Lyght correctly points out that the statute requires that such barriers "shall be lighted at night." The barriers here not being lighted, we conclude that under the statute, the road was not closed. Section 86.06, therefore, could not provide a basis for reasonable suspicion that Lyght violated the law.
¶15 The other statute Lyght might have violated by driving on Park Drive is WIS. STAT. § 346.04(2), which reads: "No operator of a vehicle shall disobey the instructions of any official traffic sign or signal unless otherwise directed by a traffic officer." Section 340.01(38) defines the term "official traffic sign":
"Official traffic control device" means all signs, signals, markings and devices, not inconsistent with chs. 341 to 349, placed or erected by authority of a public body or official having jurisdiction for the purpose of regulating, warning or guiding traffic; and includes the terms "official traffic sign" and "official traffic signal."
¶16 Lyght contends that the sign reading "ROAD CLOSED AHEAD LOCAL TRAFFIC ONLY" was not erected by the authority of any public body or official, and was thus not an official traffic sign under WIS. STAT. § 346.04. If this is correct, it was legal to drive on Park Drive, and Officer Ritzema's suspicion was based upon a mistaken view of the law.
¶17 On a motion to suppress, the defendant generally bears the burden of producing evidence to support a constitutional violation. The State then bears the burden of showing constitutionality by a preponderance of the evidence. State v. Noble, 2002 WI 64, ¶19, 253 Wis. 2d 206, 646 N.W.2d 38. Lyght suggests that the construction company erected the sign. Given the procedure created by WIS. STAT. § 86.06, and the fact that road construction was underway, this is certainly a reasonable conclusion. The State has offered no evidence showing otherwise, and does not address the issue in its brief. Since it is the State's burden to show that the arrest was lawful, we conclude that the sign was not an official sign under WIS. STAT. § 346.04.[5] Since Officer Ritzema stopped Lyght based upon a misapprehension of what the law required, the stop was unsupported by reasonable suspicion, and the evidence derived from the stop should have been suppressed.
By the Court.  Judgment reversed.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2003-04). All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] WISCONSIN STAT. § 347.43(1s) reads: "No person may operate on a highway any motor vehicle manufactured after January 1, 1936, unless the motor vehicle is equipped with safety glass wherever glass is used on the motor vehicle in partitions, doors, windows or windshields." Thus, it was ambiguous whether the statute required safety glass wherever glass is normally used on automobiles, such as in windows, or whether it simply required that any glass used be safety glass.
[3] The court also found that the case presented an issue of probable cause, rather than reasonable suspicion, because the officer saw what he believed to be a violation committed in his presence, rather than observing facts that led him to suspect a violation. Longcore, 226 Wis. 2d at 8-9. The State argues that Longcore applied its mistake of law analysis only to probable cause, and that in this case, the issue is reasonable suspicion. We do not agree with this reading of Longcore. The Longcore court distinguished that case from cases involving suspicious behavior that does not indicate any particular offense, such as fleeing from the police. Id. at 8 n.8. Such flight may create suspicion; such suspicion would not be unreasonable simply because the officer would not know what law had been violated. Here, as in Longcore, the officer witnessed conduct that he believed to be in violation of a particular statute. If he was wrong about the requirements of the statute, the Longcore rule applies.
[4] WISCONSIN STAT. § 86.06(1) reads, in relevant part:

[D]uring the construction or repair of [an impassable or unsafe for travel] highway ... the authorities in charge of the maintenance or construction thereof may keep it closed by maintaining barriers at each end of the closed portion. The barriers shall be of such material and construction and so placed as to indicate that the highway is closed and shall be lighted at night.
(2) Any person who ... passes over or beyond any barrier so erected, or travels with any vehicle upon any portion of a highway closed by barriers as in this section provided ... shall be liable to a fine of not less than $10 nor more than $100, or to imprisonment not less than 10 nor more than 60 days, or both, and in addition thereto shall be liable for all damages done to the highway, said damages to be recovered by such governmental agency.
[5] We do not suggest that, in every case, the State bears a burden of demonstrating the authenticity of the sign in question. The facts of this case, however, place at issue the sign's imprimatur.