COURT OF APPEALS
DECISION
DATED AND FILED

**January 11, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2020AP1695**

STATE OF WISCONSIN

Cir. Ct. No.  2020CV3741

IN COURT OF APPEALS
DISTRICT I

PETITIONER,

   PETITIONER-RESPONDENT,

   V.

MICHAEL K. GARLAND,

   RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Milwaukee County: CHRISTOPHER R. FOLEY, Judge. *Reversed and cause remanded with directions*.

Before Brash, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Michael K. Garland appeals from an order granting a two-year injunction against him to cease harassment of and avoid contact with the Petitioner, with whom he previously had a relationship, and from an order denying his motion for reconsideration.  Garland argues that there was insufficient evidence to support the granting of the injunction.  He further asserts that he was never afforded the opportunity to review the evidence upon which the trial court based its decision—phone records, text messages, and pictures—submitted by the Petitioner, and thus he contends that evidence was admitted erroneously.

¶2     We conclude that the trial court violated Garland's due process rights in failing to afford him the opportunity to review the evidence upon which it based its decision.  We therefore reverse its order granting the injunction and the order denying the motion for reconsideration, and remand this matter for a new hearing.

## BACKGROUND

¶3     The Petitioner filed a petition for a temporary restraining order and a request for an injunction hearing against Garland for harassment in June 2020.  In the petition, the Petitioner alleged that Garland had gone to her workplace, driven by her home, texted her from his cell phone as well as others' phones, left "insulting" voicemails, threatened her, and threatened to damage her property.  She asserted that the harassment had been ongoing since January 2020.

¶4     A court commissioner denied the petition and dismissed the case in July 2020, finding that the Petitioner had failed to meet her burden of proof.  The Petitioner then filed a motion for *de novo* review, and a hearing was held before the trial court over two days in August 2020.

¶5      At the hearing, the Petitioner explained that she had read the text messages into the record during the hearing before the court commissioner. The trial court requested that the Petitioner file "documentary evidence" relating to her allegations for the court to review.

¶6      The hearing was continued approximately a week later, after the trial court had an opportunity to review the evidence submitted by the Petitioner. The court indicated that it had a "slight concern" that Garland "probably [hadn't] seen" that evidence, although it further stated that the documents would be available for viewing by Garland on CCAP.[1]

¶7      The trial court found that there was no evidence of any conduct prior to April 2020 "that would support the issuance of an injunction" against Garland. In fact, the Petitioner testified that there was no contact at all between her and Garland from early March 2020 until later in April 2020. However, beginning on April 22, 2020, there was a "flurry of text messages" to the Petitioner from a phone number that was not Garland's,[2] but based on the substance of those messages, the Petitioner believed that Garland was responsible for them. In contrast, Garland testified that he had not called or texted the Petitioner since late February 2020, that he was not responsible for any of the messages that the Petitioner had submitted as evidence, and that the relationship between them "is over with."

---

[1] CCAP is an acronym for Wisconsin's Consolidated Court Automation Programs. The online website reflects information entered by court staff.

[2] The Petitioner testified that she had blocked Garland's number on her phone, but that he had continued to call her.

¶8      The trial court observed that there was "overt and overwhelming evidence of a mutually dysfunctional relationship and very destructive relationship" between the Petitioner and Garland. It further noted that the evidence submitted by the Petitioner reflected that at certain times there was "clearly an effort" by the Petitioner to "disengage" from her relationship with Garland, but that there were also "clear instances" where the Petitioner chose "either explicitly or implicitly" to re-engage the relationship. In fact, the court indicated that if Garland had filed a cross-petition for an injunction against the Petitioner, the court may have granted it based on threats contained in text messages sent by the Petitioner to Garland.

¶9      Furthermore, the trial court found that the initial text messages received by the Petitioner on April 22, 2020, were not "authored by or instigated on behalf of" Garland, but rather were likely from a female who viewed the Petitioner as a "romantic rival" for the "affections" of either Garland or another man. However, the court stated that it was "reasonably certain" that Garland became aware of those initial texts and then began authoring further texts beginning on the evening of April 23, 2020, and "likely" had authored some of the texts immediately preceding those texts. Those findings were based on certain references in the texts; in particular, the texts refer to "the mess" between the Petitioner and Garland as being "tied to" Hope Avenue, which the court confirmed with Garland is a reference to his mother's residence.

¶10     The trial court stated that the April text messages it found were authored by Garland contained "specific threats to do physical harm," and therefore warranted the issuance of the harassment injunction. The injunction was issued for two years, and prohibits Garland from possessing a firearm until the injunction expires.

4

¶11 In September 2020, Garland, through counsel, filed a motion for reconsideration of the grant of the injunction. That motion was denied by the trial court. This appeal follows.

## DISCUSSION

¶12 Pursuant to WIS. STAT. § 813.125(4)(a) (2019-20),[3] the trial court may grant a petition for an injunction if it "finds reasonable grounds to believe that the respondent has engaged in harassment with intent to harass or intimidate the petitioner." Sec. 813.125(4)(a)3. Our review of this finding "presents a mixed question of fact and law." *Welytok v. Ziolkowski*, 2008 WI App 67, ¶23, 312 Wis. 2d 435, 752 N.W.2d 359. We will uphold the trial court's factual findings unless they are clearly erroneous. *Id.* However, we "independently review the [trial] court's conclusion, based on the established facts, whether such reasonable grounds exist." *Id.* Furthermore, whether the Petitioner has met her burden of proof is also a question of law which we review *de novo*. *See id.*

¶13 Still, because WIS. STAT. § 813.125(4)(a) provides that the trial court *may* grant an injunction upon finding reasonable grounds to do so, this implies the exercise of discretion. *Welytok*, 312 Wis. 2d 435, ¶23. Therefore, our review of the trial court's decision "ultimately is limited to whether that discretion was properly exercised." *Id.* We will uphold a discretionary decision of the circuit court if it "'has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach.'" *Hefty v. Strickhouser*, 2008 WI 96, ¶28, 312 Wis. 2d 530,

---

[3] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

752 N.W.2d 820 (citation omitted). Put another way, the trial court erroneously exercises its discretion "when it applies the wrong legal standard or if the facts of record fail to support the [trial] court's decision." *Werner v. Hendree*, 2011 WI 10, ¶59, 331 Wis. 2d 511, 795 N.W.2d 423.

¶14 Garland argues that the trial court erroneously admitted the evidence submitted by the Petitioner upon which the court then based its decision, without affording Garland an opportunity to review that evidence. This argument implicates Garland's right to due process. "Generally, due process requires notice and an opportunity to be heard before a deprivation of life, liberty or property." *Santiago v. Ware*, 205 Wis. 2d 295, 336, 556 N.W.2d 356 (Ct. App. 1996). Specifically, Garland's argument involves his right to present a defense and his constitutional right to a fair trial. *See* **State v. Vanmanivong**, 2003 WI 41, ¶17, 261 Wis. 2d 202, 661 N.W.2d 76. We review the application of constitutional principles to the facts of a case *de novo*. *See* **State v. Noble**, 2002 WI 64, ¶19, 253 Wis. 2d 206, 646 N.W.2d 38.

¶15 Here, the trial court observed that Garland "probably" had not seen the evidence submitted by the Petitioner at the time of the hearing, and merely presumed that Garland could access that information on CCAP. Nevertheless, the trial court granted the injunction against Garland based on that evidence. Furthermore, that injunction included a prohibition on Garland's right to possess a firearm.

¶16 "Certainly, fair play underpins the concept of due process of law." *Id.* We conclude that the trial court's action here was a violation of Garland's due process rights, and therefore the trial court erroneously exercised its discretion by granting the injunction against him. *See* **Werner**, 331 Wis. 2d 511, ¶59.

Consequently, we reverse the trial court's orders granting the injunction and denying Garland's motion for reconsideration, and remand this matter for a new hearing.[4]

*By the Court.*—Orders reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[4] Based on this conclusion, we do not reach Garland's argument relating to the sufficiency of the evidence. *See* ***Cholvin v. DHS***, 2008 WI App 127, ¶34, 313 Wis. 2d 749, 758 N.W.2d 118 ("if a decision on one point disposes of the appeal, we will not decide the other issues raised").