**2025 WI 22**

# Supreme Court of Wisconsin



STATE OF WISCONSIN,
*Plaintiff-Respondent*,

*v.*

KORDELL L. GRADY,
*Defendant-Appellant-Petitioner*.

No. 2023AP1464-CR
Decided June 13, 2025

REVIEW of a decision of the Court of Appeals
Waukesha County Circuit Court (Paul Bugenhagen Jr., J.) No.
2021CF1379

ZIEGLER, J., delivered the majority opinion of the Court, in which
ANN WALSH BRADLEY, C.J., REBECCA GRASSL BRADLEY, DALLET, HAGEDORN,
and KAROFSKY, JJ., joined. DALLET, J., filed a concurring opinion, in which
ANN WALSH BRADLEY, C.J., joined. PROTASIEWICZ, J., filed a dissenting
opinion.

¶1    ANNETTE KINGSLAND ZIEGLER, J. This is a review of an
unpublished, unauthored summary affirmance of the court of appeals, *State
v. Grady*, No. 2023AP1464-CR, unpublished order (Wis. Ct. App. July 17,
2024), affirming the judgment and the circuit court's decision to deny
Kordell L. Grady's motion for postconviction relief.

¶2    Following a high-speed chase with law enforcement, the State
charged Grady with a number of criminal offenses. Grady accepted a plea

deal, pleading no contest to three of the offenses for which he was charged. These convictions are not disputed. What is disputed is whether Grady's due process rights were violated at a restitution hearing.

¶3	In short, restitution was ordered because during the chase, Grady struck a law enforcement vehicle multiple times, causing significant damage. The insurer sought restitution for the damage caused. During the restitution hearing, Grady's counsel argued that Grady did not have the ability to pay the requested restitution amount. Grady, who attended the hearing via Zoom, interrupted the proceeding as his counsel was making her argument. The circuit court asked Grady whether he wished to speak with his attorney, and Grady stated that he did. Grady conversed with his lawyer despite the fact that the circuit court warned Grady that he could be heard by everyone in the courtroom, including the Assistant District Attorney. While speaking with his attorney, Grady made a number of statements that undermined his attorney's argument regarding restitution, which the Assistant District Attorney highlighted when later making his argument about the same. The circuit court ordered Grady to pay the full restitution amount requested.

¶4	Grady filed a motion for postconviction relief, arguing that he is entitled to a new restitution hearing because the circuit court violated his due process right to a fundamentally fair proceeding by failing to structure the hearing in such a way that Grady could consult confidentially with his counsel. Grady also argued the circuit court erred by allowing the Assistant District Attorney to hear Grady's conversation with his attorney and reference the contents of that conversation in the Assistant District Attorney's argument before the circuit court. Grady claimed the conversation between Grady and his attorney during the restitution hearing was a privileged attorney-client conversation under WIS. STAT. § 905.03(2) (attorney-client privilege) (2021–22).[1] The circuit court rejected Grady's arguments, finding that Grady did not intend for his conversation with his counsel to be confidential. Grady appealed, and the court of appeals summarily affirmed.

¶5	We defer to the circuit court's factual finding that Grady did not intend for his conversation with his counsel during the restitution

---

[1] All subsequent references to the Wisconsin Statutes are to the 2021–22 version unless otherwise indicated.

hearing to be confidential because that factual finding is not clearly erroneous. Therefore, Grady's due process argument must be rejected. The circuit court did not deprive Grady of a fundamentally fair proceeding by failing to provide a means by which Grady could privately speak with his attorney. Grady never sought to have a confidential conversation with his attorney. For the same reason, Grady's conversation with his attorney during the restitution hearing was clearly not privileged under WIS. STAT. § 905.03(2). The court of appeals is affirmed.

I

¶6     On September 4, 2021, Grady was involved in a high-speed chase with law enforcement after he stole a vehicle belonging to the City of Milwaukee. During the pursuit, Grady twice struck a law enforcement vehicle owned by the City of Muskego. The State charged Grady with two counts of attempting to flee or elude an officer, WIS. STAT. § 346.04(3); two counts of committing a hit and run on an attended vehicle, WIS. STAT. § 346.67(1); one count of bail jumping, WIS. STAT. § 946.49(1); one count of obstructing an officer, WIS. STAT. § 946.41(1); three counts of first-degree recklessly endangering safety, WIS. STAT. § 941.30(1); and one count of operating a motor vehicle without the owner's consent, WIS. STAT. § 943.23(2). Ultimately, Grady accepted a plea agreement and pled no contest to one count of attempting to flee or elude an officer, one count of first-degree recklessly endangering safety, and one count of operating a motor vehicle without the owner's consent. At a plea hearing, the circuit court accepted Grady's no contest pleas. The circuit court dismissed and read in the remaining charges and sentenced Grady to a total of three years of initial confinement and three years of extended supervision.

¶7     At the plea hearing, the State raised the issue of restitution for the damage Grady caused during the chase. *See generally* WIS. STAT. § 973.20 (restitution). The City of Muskego's insurer, Statewide Services, Incorporated ("Statewide"), had previously filed an affidavit with the circuit court requesting $19,071.28 for the damage Grady caused to the City of Muskego's vehicle. The affidavit stated that $18,071.28 of the request was for expenses paid by Statewide to repair the vehicle, and the remaining $1,000 was for the insurance deductible paid by the City of Muskego. The affidavit also stated that "[o]nce our insured's deductible has been reimbursed, please make any additional restitution checks payable to: League of Wisconsin Municipalities Mutual Insurance Company (LWMMI)." (Bolding omitted.) Grady's counsel stated that there was no

objection to the restitution amount, but his counsel requested a restitution hearing to argue Grady's ability to pay. *See* § 973.20(13).

¶8 The circuit court held a restitution hearing on May 5, 2022. Grady appeared at the hearing remotely from Dodge Correctional Institution via the internet-based audiovisual conferencing platform Zoom. Everyone else appeared in person in the courtroom. Grady's counsel stipulated that the $19,071.28 requested by Statewide was an accurate restitution amount, but Grady's counsel argued that the circuit court should not order him to pay restitution because Grady lacked the ability to pay.

¶9 Grady's counsel argued that Grady was eligible for State Public Defender representation because "[h]e did not have any assets or an income at the time that this [] case arose." Grady's counsel also explained that Grady had a six-month-old child that he would need to support financially. While Grady's counsel was presenting her argument, Grady interrupted, "Wait, what --."

> [Grady's counsel]: And I believe Mr. Grady is trying to talk.
>
> [Circuit court]: Mr. Grady, did you need to speak with your attorney for a moment?
>
> [Grady]: Yes.
>
> [Circuit court]: All right. Off the record for a moment.
>
> (OFF-THE-RECORD DISCUSSION.)
>
> [Circuit court]: Back on the record. [Grady's counsel], anything else you want to add?
>
> [Grady's counsel]: No, Your Honor.
>
> [Circuit court]: State, anything for argument?
>
> [Assistant District Attorney]: I mean, it sounds like there's some ability to pay. I'm also familiar that there's work opportunities within the prison system and I know that is an extremely small wage, but a portion of that can be allocated to restitution. So there are means to collect restitution here. To

4

his credit, it sounds like Mr. Grady is saying that he can work while out on extended supervision. . . . Sounds like, if I heard him correctly, he's paid over $3,000 in tickets in his past, so I'm asking the [c]ourt to order it all, as he's acknowledged that he's responsible for the[] amount[]. . . .

[Circuit court]: And for the record, we had gone off the record when [Grady] was speaking with his attorney. I warned him -- or told him that everybody could hear him obviously. And that is what [the Assistant District Attorney] was referring to. But what he was referring to obviously is not going to show up in the transcript.

Following the Assistant District Attorney's argument, Grady's counsel argued that when Grady is released, "he will have a lot of financial responsibilities, so to kind of saddle him with this stuff that may seem insurmountable, may actually be a detriment to his success into [sic] earning money and hopefully eventually living on his own." Ultimately, the circuit court ordered Grady to pay the full restitution amount that Statewide requested.

¶10 Grady filed a motion for postconviction relief, seeking a new restitution hearing. First, Grady argued that his trial counsel was ineffective, violating his right to have effective assistance of counsel.[2] Among other things, Grady argued that his counsel was ineffective for stipulating to a "clearly erroneous" restitution amount, the $19,071.28. The

---

[2] Under the Sixth and Fourteenth Amendments of the United States Constitution, as well as Article I, Section 7 of the Wisconsin Constitution, a criminal defendant is guaranteed the right to effective assistance of counsel. *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93. "To demonstrate that counsel's assistance was ineffective, the defendant must establish that counsel's performance was deficient and that the deficient performance was prejudicial." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish that counsel performed deficiently, "a defendant must demonstrate that counsel's performance fell below 'an objective standard of reasonableness.'" *State v. Savage*, 2020 WI 93, ¶28, 395 Wis. 2d 1, 951 N.W.2d 838 (quoting *Breitzman*, 378 Wis. 2d 431, ¶38). "Prejudice occurs where the attorney's error is of such magnitude that there is a reasonable probability that, absent the error, 'the result of the proceeding would have been different.'" *State v. Erickson*, 227 Wis. 2d 758, 769, 596 N.W.2d 749 (1999) (quoting *Strickland*, 466 U.S. at 694).

amount should have been $18,071.28. Statewide, it was argued, could not be the one to request the $1,000 for the insurance deductible paid by the City of Muskego. Second, Grady argued he was entitled to a new restitution hearing because the circuit court violated his due process right to a fundamentally fair proceeding. According to Grady, the circuit court deprived him of his ability to confidentially consult with his attorney at the restitution hearing. Grady contended that he was "forced to choose between" not speaking with his attorney at all and speaking with his attorney while everyone in the courtroom could hear the conversation. Third, Grady argued that he was entitled to a new restitution hearing because the circuit court allowed the Assistant District Attorney to hear Grady's conversation with his attorney during the restitution hearing and reference the contents of that conversation in the Assistant District Attorney's argument before the circuit court. According to Grady, the conversation between Grady and his attorney during the restitution hearing was a privileged attorney-client conversation under WIS. STAT. § 905.03(2).[3]

¶11 On August 2, 2023, the circuit court held a hearing on Grady's motion for postconviction relief. The circuit court rejected Grady's ineffective assistance of counsel claim without holding a *Machner*[4] hearing.

---

[3] WISCONSIN STAT. § 905.03(2) provides:

GENERAL RULE OF PRIVILEGE. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client: between the client or the client's representative and the client's lawyer or the lawyer's representative; or between the client's lawyer and the lawyer's representative; or by the client or the client's lawyer to a lawyer representing another in a matter of common interest; or between representatives of the client or between the client and a representative of the client; or between lawyers representing the client.

[4] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979). "A *Machner* hearing is '[t]he evidentiary hearing to evaluate counsel's effectiveness, which includes counsel's testimony to explain his or her handling of the case.'" *State v. Jackson*, 2023 WI 3, ¶1 n.1, 405 Wis. 2d 458, 983 N.W.2d 608 (alteration in

Looking to Statewide's affidavit, the circuit court found that Statewide has a contractual relationship with the City of Muskego such that it must attempt to collect the amount paid by the City of Muskego for the insurance deductible and reimburse the City of Muskego for that amount, if recovered. The circuit court also determined that Grady could not show prejudice. The circuit court recognized that Grady did not dispute that he owed the full $19,071.28. An objection from Grady's counsel would not have changed how much Grady would ultimately be required to pay in restitution.

¶12 As to Grady's due process argument, the circuit court determined there was no violation of Grady's due process rights. When a defendant requests a confidential conversation, the circuit court explained, steps are taken to ensure the defendant may have a confidential conversation with his counsel. The circuit court, however, found that Grady did not intend for his conversation with his attorney to be confidential. The circuit court explained that Grady must have recognized that when he spoke over Zoom, his voice would be broadcast to the entire courtroom. It was clear that the Assistant District Attorney was in the courtroom at the time that Grady began to speak with his attorney. For the same reasons, the circuit court determined that Grady's statements to his attorney during the restitution hearing were not privileged under WIS. STAT. § 905.03(2).

¶13 Grady appealed his judgment of conviction, challenging the restitution award, and the circuit court's denial of his motion for postconviction relief. The court of appeals summarily affirmed. *Grady*, No. 2023AP1464-CR, unpublished order, at 1–2. The court of appeals determined the circuit court did not err in denying Grady a *Machner* hearing. *Id.* at 5. The court of appeals was satisfied that the record demonstrates that Grady was not prejudiced by his counsel's stipulation of the restitution amount:

> First, it is undisputed that the full amount of damage to the police car caused by Grady's criminal conduct was $19,071.28. Second, the circuit court found that Statewide's restitution request "contemplated" that the $1,000 deductible would be paid back to [the City of] Muskego based on the parties'

---

original) (quoting *State v. Balliette*, 2011 WI 79, ¶31, 336 Wis. 2d 358, 805 N.W.2d 334).

contractual relationship and as such there would be no unjust enrichment for Statewide. The circuit court's finding that Statewide had a contractual obligation to reimburse [the City of] Muskego made its affidavit requesting reimbursement of the deductible appropriate and made the circuit court's restitution award not clearly erroneous.

*Id.* at 6 (internal citations omitted).

¶14 The court of appeals also rejected Grady's due process argument. The court of appeals saw "[n]othing in the record suggest[ing] that Grady asked to speak privately with his attorney." *Id.* at 4. Additionally, the circuit court "specifically warned Grady that 'everybody could hear him obviously[.]'" *Id.* After the warning, "neither Grady nor trial counsel asked for a private conference or to delay the restitution hearing so that they could privately confer." *Id.* Consequently, the circuit court did not err in finding that Grady never intended his communication with his attorney to be a confidential communication with counsel. *Id.* at 4–5. For the same reasons, the court of appeals determined Grady's conversation with his attorney was not privileged under WIS. STAT. § 905.03(2). *Id.* at 5.

¶15 A concurrence in part and dissent in part was authored by one judge, who determined that the circuit court violated Grady's right to due process by failing to adequately facilitate Grady's ability to confidentially communicate with his attorney. *Id.* at 8 (Lazar, J., concurring in part, dissenting in part). It was argued that "[t]he circuit court allowed Grady to be placed in the untenable position of not being able to communicate confidentially with his attorney at any point during the restitution hearing at issue." *Id.* at 9.

¶16 Grady filed a petition for review with this court, which we granted on January 16, 2025.

II

¶17 "The interpretation and application of a constitutional provision are questions of law that we review de novo." *State v. Kerr*, 2018 WI 87, ¶19, 383 Wis. 2d 306, 913 N.W.2d 787 (citing *Black v. City of Milwaukee*, 2016 WI 47, ¶21, 369 Wis. 2d 272, 882 N.W.2d 333); *State v. Hoyle*, 2023 WI 24, ¶15, 406 Wis. 2d 373, 987 N.W.2d 732. But this court will defer to the circuit court's findings of fact unless they are clearly erroneous. *State v. Pico*, 2018 WI 66, ¶31, 382 Wis. 2d 273, 914 N.W.2d 95 (stating that an

appellate court is "duty-bound to defer to [a circuit court's] factual findings unless they are clearly erroneous"). "A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence." *Metro. Assocs. v. City of Milwaukee*, 2018 WI 4, ¶62, 379 Wis. 2d 141, 905 N.W.2d 784 (citing *State v. Arias*, 2008 WI 84, ¶12, 311 Wis. 2d 358, 752 N.W.2d 748). "Findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding." *State v. Wiskerchen*, 2019 WI 1, ¶30, 385 Wis. 2d 120, 921 N.W.2d 730 (citing *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530). "We search the record not for evidence opposing the circuit court's decision, but for evidence supporting it." *Id.*

III

¶18   "The Fourteenth Amendment to the United States Constitution . . . prohibit[s] government actions that deprive any person of life, liberty, or property without due process of law." *Aicher ex rel. LaBarge v. Wis. Patients Comp. Fund*, 2000 WI 98, ¶80, 237 Wis. 2d 99, 613 N.W.2d 849. "Due process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria & Rest. Workers Union, Loc. 473, AFL-CIO v. McElroy*, 367 U.S. 886, 895 (1961) (cleaned up) (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 162 (1951) (Frankfurter, J., concurring)). It "'is flexible and calls for such procedural protections as the particular situation demands.'" *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). The Due Process Clause "'centrally concerns the fundamental fairness of governmental activity.'" *N.C. Dep't of Revenue v. Kimberley Rice Kaestner 1992 Fam. Tr.*, 588 U.S. 262, 268 (2019) (quoting *Quill Corp. v. North Dakota*, 504 U.S. 298, 312 (1992)).

¶19   Before this court, Grady argues that his due process right to a fundamentally fair proceeding was violated.[5] Grady contends that the

---

[5] As before the court of appeals, Grady also argues that the circuit court erred in failing to hold a *Machner* hearing. "A defendant is entitled to a *Machner* hearing if his postconviction motion sufficiently alleges ineffective assistance of counsel and the record fails to conclusively demonstrate that he is not entitled to relief." *Jackson*, 405 Wis. 2d 458, ¶1 (footnote omitted) (citing *State v. Ruffin*, 2022 WI 34, ¶37, 401 Wis. 2d 619, 974 N.W.2d 432). "[I]f the record conclusively demonstrates that the defendant is not entitled to relief, then either option— holding a hearing or not—is within the circuit court's discretion." *Ruffin*, 401 Wis. 2d 619, ¶28. "We review a circuit court's discretionary decisions under the

circuit court "failed to structure the [restitution] hearing in such a way that [] Grady could actually consult *confidentially* with counsel." According to Grady, after he requested to speak with his attorney, the circuit court should have either "asked [Grady's] counsel to step out of the hearing and to enter a conference room, where [she] could have used her phone or computer to enter a confidential 'break-out room' facilitated by the circuit court over the Zoom platform[,]" or "cleared the courtroom and permitted [Grady's] counsel to use the existing video call to speak briefly with her client." As a third alternative, Grady suggests the circuit court should have adjourned the proceeding. We are told that the circuit court's failure to undertake any of these actions violated due process.

¶20 Grady also contends that the circuit court erroneously allowed the Assistant District Attorney to listen to Grady's conversation with his counsel during the restitution hearing because Grady's statements to his counsel were privileged attorney-client communications under WIS. STAT. § 905.03(2). Grady claims that in requesting to speak to his counsel, he expressed his desire to consult confidentially with his counsel. Grady argues that because he intended his conversation with his attorney to be confidential, the circuit court should not have allowed the Assistant District Attorney to hear the conversation and use what he overheard to argue that Grady had the ability to pay the requested restitution amount.

¶21 In adhering to the controlling standard of review, we review the factual findings of the circuit court, not to second-guess those findings, but rather to determine whether "the evidence would permit a reasonable person to make the same finding." *See Wiskerchen*, 385 Wis. 2d 120, ¶30; *Robin K. v. Lamanda M.*, 2006 WI 68, ¶¶12, 18, 291 Wis. 2d 333, 718 N.W.2d 38. In light of the circuit court's factual findings and the record before us, we must reject Grady's arguments. Specifically, the circuit court found that Grady did not intend for his conversation with his attorney

---

deferential erroneous exercise of discretion standard." *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433 (first citing *State v. Franklin*, 2004 WI 38, ¶6, 270 Wis. 2d 271, 677 N.W.2d 276; and then citing *State v. Bentley*, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996)). We agree with the court of appeals' decision on this issue. The record conclusively demonstrates Grady was not prejudiced by his counsel's stipulation of the restitution amount. "[I]t is undisputed that the full amount of damage to the police car caused by Grady's criminal conduct was $19,071.28." *State v. Grady*, No. 2023AP1464-CR, unpublished order, at 6 (Wis. Ct. App. July 17, 2024). Consequently, Grady was not entitled to a *Machner* hearing.

during the restitution hearing to be confidential. The record adequately supports the circuit court's factual finding. The record indicates that after Grady told the circuit court that he wished to speak with his attorney, the circuit court warned him that "everybody [in the courtroom] could hear him." Our review is limited to the record before us, and nothing in the record indicates that Grady or his attorney requested a private conversation in response to the circuit court's warning. *See Robin K.*, 291 Wis. 2d 333, ¶18; *Ryde v. Dane Cnty. Dep't of Soc. Servs.*, 76 Wis. 2d 558, 563, 251 N.W.2d 791 (1977). On this record, we must defer to the circuit court's factual finding because, even if a reasonable person could find otherwise, a reasonable person could find that Grady did not intend for his conversation with his counsel to be confidential. *See Wiskerchen*, 385 Wis. 2d 120, ¶30; *Robin K.*, 291 Wis. 2d 333, ¶¶12, 18.

¶22 The standard of review we must apply answers the questions before us. The circuit court found that Grady did not intend for his conversation with his counsel during the restitution hearing to be confidential. As discussed above, that finding is not clearly erroneous. Accordingly, Grady's due process argument fails. The circuit court did not deprive Grady of a fundamentally fair proceeding. The constitutional requirement of fundamental fairness did not call for the circuit court to facilitate a confidential conversation that Grady did not seek or request. Grady's argument regarding WIS. STAT. § 905.03(2) also fails. Grady's conversation with his attorney at the restitution hearing was not privileged under § 905.03(2). Section 905.03(2) applies to "confidential communications." *See Lane v. Sharp Packaging Sys., Inc.*, 2002 WI 28, ¶21, 251 Wis. 2d 68, 640 N.W.2d 788; *State v. Meeks*, 2003 WI 104, ¶29, 263 Wis. 2d 794, 666 N.W.2d 859 ("The attorney-client privilege applies only to confidential communications between an attorney and the client."). A communication is confidential if it is "not intended to be disclosed to [third] persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." § 905.03(1)(d). Since, as the circuit court found, Grady did not intend for his communication to be confidential, it was not privileged under § 905.03(2).

¶23 Grady resists these conclusions. He suggests that the circuit court's finding that he did not intend for his conversation with his counsel to be confidential is clearly erroneous because the circuit court "went 'off the record'" after Grady expressed that he wanted to speak with his counsel. But the circuit court's decision to go off the record while Grady spoke with his attorney sheds no light on whether Grady intended to have

a confidential conversation with his counsel. Circuit courts go on and off the record for a variety of reasons. Grady appears to assume that the circuit court went off the record because it understood that Grady requested a confidential conversation with his attorney. That is a dubious assumption. It is just as likely that the circuit court would go off the record if a defendant requested a non-confidential conversation with his attorney.

¶24 Grady's position is also without support in the record. Nothing in the record indicates that the circuit court went off the record because it perceived Grady's request as a request for a confidential conversation. Finally, we observe that even if the circuit court's decision to go off the record did somehow indicate that Grady intended to have a confidential conversation with his counsel, it would be insufficient to overcome the deference this court must give to a circuit court's factual findings. *See Royster-Clark*, 290 Wis. 2d 264, ¶11 (stating that the clearly erroneous standard "is highly deferential"); *Phelps v. Physicians Ins. Co. of Wis., Inc.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615 ("[A]lthough evidence may have presented competing factual inferences, the circuit court's findings are to be sustained if they do not go 'against the great weight and clear preponderance of the evidence.'" (quoting *Arias*, 311 Wis. 2d 358, ¶12)). Again, the standard of review we must apply answers the questions before us.

IV

¶25 Ultimately, we must adhere to our standard of review and defer to the circuit court's findings of fact unless they are clearly erroneous. They are not. The circuit court found that Grady did not intend for his conversation with his counsel during the restitution hearing to be confidential. Therefore, Grady's due process argument must be rejected. The circuit court did not deprive Grady of a fundamentally fair proceeding by failing to provide a means by which Grady could privately speak with his attorney. Grady never sought to have a confidential conversation with his attorney. For the same reason, Grady's conversation with his attorney at the restitution hearing was clearly not privileged under WIS. STAT. § 905.03(2). The court of appeals is affirmed.

*By the Court.*—The decision of the court of appeals is affirmed.

REBECCA FRANK DALLET, J., with whom ANN WALSH BRADLEY, C.J., joins, concurring.

¶26    I join the majority opinion, which correctly concludes that no due-process violation occurred in this case. Based on the record before us, the circuit court's finding that Grady did not intend for his communications with his attorney to be confidential was not clearly erroneous. This is fatal to Grady's due-process claim. I write separately, however, to describe the ways in which this situation was avoidable and to set forth a few straightforward best practices that will ensure the fairness of all remote and partially remote proceedings going forward.

¶27    First and foremost, the circuit court did not do enough to ensure that Grady could speak with his attorney privately. This was the first time that Grady appeared remotely in this case. Nevertheless, the circuit court did not explain to Grady at the start of the hearing that he could communicate with his attorney privately or how that would happen. To its credit, when Grady interrupted his attorney's argument, the circuit court did ask him if he "need[ed] to speak with [his] attorney for a moment." But, instead of providing Grady with a way of doing so privately, the circuit court simply said that it was going off the record for a moment. Grady, however, may have understood that to mean that his statements would be treated as confidential. And the circuit court at some point telling Grady that "everybody could hear him obviously" may not have entirely clarified matters.[1] In any event, when it became clear that Grady was making prejudicial statements to his attorney in open court,[2] the circuit court did not offer to vacate the courtroom along with the assistant district attorney or to make other arrangements for the conversation to continue privately.

¶28    Second, Grady's attorney also did not do enough to ensure Grady could speak with her privately. Indeed, she did not request a means

---

[1] Because this happened off the record, it is unclear whether the circuit court said this at the outset or once Grady began making prejudicial statements. Without a transcript, we must rely on the circuit court's recitation of what happened.

[2] That Grady's statements were prejudicial should have been obvious, as the central issue at the hearing was whether Grady was able to pay restitution, and his statements indicated he may have some ability to pay.

of communicating privately at any point, even after Grady began making prejudicial statements. And she did not object when the State then used[3] Grady's statements against him.[4]

¶29    In order to prevent a situation like this from happening again, the following are a few straightforward best practices designed to ensure that parties in remote or partially remote proceedings are given the opportunity to communicate with counsel privately. In criminal cases and some other matters,[5] the statutes already require that "a separate private voice communication facility shall be available so that the defendant or respondent and his or her attorney are able to communicate privately during the entire proceeding." WIS. STAT. § 855.54(1)(g). The same can and should be done for any other type of case. But even where private avenues of communication are available, circuit courts[6] cannot assume that a party or even their attorney knows how to use them. Thus, circuit courts should be proactive and state on the record at the beginning of a proceeding that a means of private communication with counsel is available and explain how such communication would occur. If a party does avail themselves of that option, the circuit court should assume that the communication is meant to be private unless told otherwise. Finally, during longer proceedings such as evidentiary hearings or trials, circuit courts should periodically inquire about whether parties need a chance to consult with their attorneys

---

[3] Having been a state or federal prosecutor for 11 years, I understand the responsibility of prosecutors to zealously advocate for victims and to hold offenders accountable. But a prosecutor also "has the responsibility of a minister of justice and not simply that of an advocate," including the "obligation[] to see that the defendant is accorded procedural justice . . . ." SCR 20:3.8 cmt. [1] (Am. Bar Ass'n). And these responsibilities are especially salient where, as here, the defendant has known mental health concerns.

[4] To the circuit court's credit, it did not rely on Grady's statements in making its decision.

[5] Specifically, proceedings under chs. 48, 51, 55, 938, and 980, which deal generally with child custody and termination of parental rights, involuntary commitment, protective placements, juvenile justice, and sexually violent person commitments.

[6] Municipal courts and other tribunals at which parties appear with their attorneys should follow these same best practices.

privately. *See, e.g., Vazquez Diaz v. Commonwealth*, 167 N.E.3d 822, 842 (Mass. 2021); *see also* WIS. STAT. § 885.60 (allowing for proceedings to be held remotely or partially remotely pursuant to the procedures set forth in that statute).

¶30    All this being said, based on this record, I cannot find that what happened here was so "shocking to the universal sense of justice" that it was fundamentally unfair, and thus a violation of due process. *See State v. Noble*, 2002 WI 64, ¶19, 253 Wis. 2d 206, 646 N.W.2d 38 (quoting another source); *see also Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973) (explaining that "fundamental fairness" is the "touchstone of due process"). The circuit court made a factual finding that Grady did not seek to have a confidential communication with his attorney, and there is nothing in the record to suggest that finding was clearly erroneous. At no point did Grady or his attorney state that they wanted a confidential communication—not when Grady initiated the conversation, not when the circuit court informed Grady that everybody could hear him, and not when the circuit court later explained that it "told him that everybody could hear him obviously." Even when the assistant district attorney began referencing Grady's statements, Grady's attorney did not object and argue that their conversation was intended to be confidential.

¶31    Due process "imposes a floor below which a state cannot descend, not a level of perfection that a state must achieve." *In re Barach*, 540 F.3d 82, 85 (1st Cir. 2008). Although I cannot conclude based on the record in this case that the proceeding fell below that floor, I hope that the best practices outlined above will be employed by circuit courts to prevent a situation like this from occurring again.  Therefore, I respectfully concur.

JANET C. PROTASIEWICZ, J., dissenting.

¶32    I agree with the majority's decision to deny Kordell Grady's claim for ineffective assistance of counsel because he failed to prove prejudice. I respectfully dissent from the majority's decision to deny Grady's claim that he was deprived due process at his restitution hearing.

¶33    The majority holds that the circuit court made a "factual finding" that Grady "did not intend" for his conversation with his counsel "to be confidential." Majority op. ¶¶5, 22. Applying the clearly erroneous standard of review, the majority defers to that "factual finding." But Grady's intent is beside the point.[1] The issue is whether the circuit court used constitutionally adequate procedures during the restitution hearing.

¶34    This court has established rules governing the use of videoconferencing in the circuit courts. *See* WIS. STAT. §§ 885.50–885.64.[2] Relevant to this case, § 885.54(1)(g) provides: "In criminal matters, and in proceedings under chs. 48, 51, 55, 938, and 980, if not in each other's physical presence, a separate private voice communication facility shall be available so that the defendant or respondent and his or her attorney are able to communicate privately during the entire proceeding."[3]

---

[1] Even if Grady's due process claim hinged on whether he intended to communicate confidentially with his lawyer, the majority employs the wrong standard of review. The circuit court held that "*on this record, I can't make a determination* that this is a confidential communication." (Emphasis added). In other words, Grady failed to carry his burden of proof. *State v. Meeks*, 2003 WI 104, ¶20, 263 Wis. 2d 794, 666 N.W.2d 859 ("The party asserting the attorney-client privilege bears the burden to establish that the privilege applies."). "Whether a party has met its burden of proof is a question of law" which the court examines "without deference to the circuit court's conclusion." *Jones v. State*, 226 Wis. 2d 565, ¶61, 594 N.W.2d 738 (1999).

[2] All subsequent references to the Wisconsin Statutes are to the 2021–22 version unless otherwise indicated.

[3] For the cases listed in WIS. STAT. § 885.54(1)(g), the defendants and respondents have a right to counsel appointed by the state public defender. WIS. STAT. § 977.08. They also have the right to the effective assistance of counsel. *See Winnebago County v. J.M.*, 2018 WI 37, ¶7, 381 Wis. 2d 28, 911 N.W.2d 41.

¶35 Circuit courts use a variety of videoconferencing platforms, including Zoom, to conduct virtual hearings. Simply ensuring that the platform being used has a tool for private communication is insufficient. In my view, at the start of a videoconference hearing for the cases listed in in § 885.54(1)(g), due process requires the circuit court to state that a means for private communication with counsel is available and explain how to request it.

¶36 The circuit court failed to provide Grady this basic information at the start of his Zoom restitution hearing. Then it allowed the State to use Grady's "off the record" disclosures to counsel "on the record" to win a restitution award for $19,571.28 against an indigent person who was obligated to help support a six-month-old-baby. Grady's Zoom restitution hearing violated due process. I would reverse the court of appeals and order a new hearing regarding his ability to pay restitution.

I.

¶37 On September 7, 2021, the State filed a complaint charging Grady, who was unemployed, homeless and suicidal, with seven crimes in connection with his theft of a car left unlocked and running. Grady stole the car in order to kill himself. At the initial appearance, the court ordered an outpatient examination to determine if Grady was mentally competent to proceed in the case. A month later, the court ordered an inpatient examination for the same purpose. The examining psychologist concluded that Grady was competent, and the court entered a finding to that effect.

¶38 Three months later, Grady pled guilty to one count of taking and driving a vehicle without the owner's consent, one count of fleeing an officer, and one count of first-degree recklessly endangering safety. During the sentencing, the court acknowledged that Grady was not "engaged in ongoing criminal activity" or "trying to harm somebody for the sake of trying to harm somebody." He was not "out purposely just trying to steal a car for the sake of stealing a car." Rather, there was "mental health component" to Grady's crimes, and he had a "limited prior criminal history." So the court imposed concurrent sentences amounting to three years of initial confinement and three years of extended supervision. Grady stipulated to the amount of restitution: $19,571.28. The court scheduled a hearing for May 5, 2022, limited to the issue of Grady's ability to pay the stipulated amount.

¶39     Up to this point, the court had held seven hearings in the case. For every one of them, Grady appeared in person. But at the May 5 restitution hearing, Grady—for the first time—appeared by Zoom from Dodge Correctional Institution. His counsel, Attorney Klein, appeared in person before the court. At the outset, Grady's counsel informed the court: "Does appear to be sight and sound sufficient to the connection, Your Honor." Neither counsel nor the court said anything further about how court hearings conducted over Zoom work.

¶40     Defense counsel proceeded to argue that Grady lacked the ability to pay $19,571.28 in restitution. She noted that Grady had qualified for a public defender due to his indigency. He had a six-month-old baby that he would be responsible for helping to support. He could not pay such a large sum while in prison or on extended supervision. At this point, the following exchange occurred:

The Defendant:  Wait, what –

Ms. Klein:  And I believe Mr. Grady is trying to talk.

The Court:  Mr. Grady, did you need to speak with your attorney for a moment?

The Defendant:  Yes.

The court:  All right. Off the record for a moment.

(Off-the-record discussion).

The Court:  Back on the record. Attorney Klein, anything else you want to add?

Ms. Klein:  No, your honor.

The Court:  State, anything for argument?

¶41     The State did not call Grady or other witnesses to testify. Instead, the State presented argument based on Grady's conversation with his lawyer. The State said: "I mean, it sounds like there's some ability to pay. I'm also familiar that there's work opportunities within the prison system and I know that is an extremely small wage, but a portion of that can be allocated to restitution. So there are means to collect restitution here." The State added: "To his credit, it sounds like Mr. Grady is saying

that he can work while out on extended supervision." After explaining that Victim B claimed $500 and the insurer claimed the remainder ($19,071.28), the State said: "Sounds like, if I heard him correctly, he's paid over $3,000 in tickets in his past, so I'm asking the court to order it all, as he's acknowledged that he's responsible for these amounts."

¶42 Noting the State's reference to Grady's conversation with counsel, the court said:

And for the record, we had gone off the record when he was speaking with his attorney. I warned him—or told him that everybody could hear him obviously. And that is what [D.A.] Sitzberger was referring to. But what he was referring to obviously is not going to show up in the transcript.

¶43 The court ordered Grady to pay the entire $19,571.28 in restitution. It acknowledged that this was "a good amount of money" and that Grady will have "other costs and expenses but these are damages that are part of his case." The circuit court said that "if he puts his mind to it, Mr. Grady can take care of this without too much difficulty."

¶44 Grady filed a postconviction motion arguing that his restitution hearing violated due process. The circuit court deprived him of the ability to consult his lawyer without opposing counsel eavesdropping, and his disclosures were used against him. Before hearing the motion, the postconviction court ordered yet another competency exam. This time, the examining psychologist diagnosed Grady with unspecified schizophrenia spectrum and other psychotic disorder and found him incompetent to proceed. The court agreed. As a result, Grady did not attend the hearing on his postconviction motion.

¶45 The postconviction court denied Grady's due process claim. The court held: "[O]n this record, I can't make a determination that this is a confidential communication." The court explained that when counsel and the client are together physically they can whisper and that "clearly indicates" that something is "not to be shared with third parties."

[B]ut in this case there's nothing on this record, and it might partially be that Attorney August, without having a client [due to incompetency], isn't able to make any further

4

argument that this is a communication that was intended to be confidential between Mr. Grady and Attorney Klein.[4]

¶46 Grady appealed. The court of appeals affirmed in a split summary disposition order. The majority adopted the postconviction court's rationale for denying Grady's due process claim. Judge Lazar dissented, arguing that the procedures used at Grady's Zoom restitution hearing violated due process.

## II.

¶47 An overview of restitution hearings under WIS. STAT. § 973.20 and videoconference hearings under WIS. STAT. §§ 885.50–885.64 is helpful to understanding the due process violation in this case.

¶48 A restitution hearing "is part of the criminal sentencing process, and serves the goals of the criminal justice system." *State v. Sweat*, 208 Wis. 2d 409, ¶21, 561 N.W.2d 695 (1997). Restitution serves the purpose of "making the victim whole and rehabilitating the defendant." *Id*. Per § 973.20(1r), the court "shall order the defendant to make full or partial restitution under this section to any victim of a crime considered at sentencing . . . unless the court finds substantial reason not to do so and states the reason on the record." When determining the amount of restitution, the court "shall consider . . . [t]he amount of loss suffered by any victim as a result of a crime considered at sentencing." § 973.20(13)(a)1. The court also "shall consider" the defendant's financial resources, present and future earning ability, "the needs and earning ability of the defendant's dependents," and "other factors which the court deems appropriate." § 973.20(13)(a)2.–5.

¶49 If the defendant is indigent, and the restitution hearing is held before or during a sentencing proceeding, or while the defendant is incarcerated, he has the right to a lawyer appointed by the state public defender. § 973.20(14)(b). All parties to a restitution hearing "shall have an opportunity to be heard, personally or through counsel, to present evidence

---

[4] At the hearing on Grady's postconviction competency to proceed, the circuit court explained that when Grady regains competency and can engage with his lawyer, he will have another opportunity to review these matters and address them more fully, pursuant to *State v. Debra A.E.*, 188 Wis. 2d 111, 523 N.W.2d 727 (1994).

and to cross-examine witnesses called by other parties." § 973.20(14)(d). The court "shall conduct the proceeding so as to do substantial justice between the parties according to the rules of substantive law," but the court "may waive the rules of practice, procedure, pleading or evidence," except in specified situations. *Id.*

¶50 In 2008, this court adopted Subchapter III to ch. 885, governing the use of videoconferencing technology in circuit courts. With one exception, all circuit court proceedings "that are conducted by videoconference, interactive video and audio transmission, audiovisual means, live audiovisual means, closed-circuit audiovisual, or other interactive electronic communication with a video component, shall be conducted in accordance with the provisions of this subchapter." § 885.64(2).[5]

¶51 Circuit courts are encouraged to use videoconferencing technology "to the greatest extent possible consistent with the limitations of the technology, the rights of litigants and other participants in matters before the courts, and the need to preserve the fairness, dignity, solemnity, and decorum of court proceedings." § 885.50(1). The rules caution that using videoconferencing technology when the technical and operational standards set forth in §§ 885.50–885.64 are not met "can result in the abridgement of fundamental rights of litigants" and "loss of the fairness, dignity, solemnity, and decorum of court proceedings that is essential to the proper administration of justice." § 885.50(3).

¶52 To ensure the proper administration of justice, our rules impose eight "technical and operational" standards for the use of videoconferencing in circuit court proceedings. § 885.54(1). The rules also provide a list of criteria for circuit courts to consider when deciding whether to use videoconference technology in a case. § 885.56(1).

¶53 Some of our "technical and operational standards" apply only to criminal matters and in proceedings under chs. 48, 51, 55, 938, and 980. One such standard provides: "if not in each other's physical presence, a separate private voice communication facility shall be available so that the defendant or respondent and his or her attorney are able to communicate

---

[5] The one exception is for proceedings under WIS. STAT. § 972.11(2m) governing testimony by a child witness during a criminal prosecution, which does not apply to this case.

privately during the entire proceeding." § 885.54(1)(g). The party requesting the videoconferencing, including the court, "shall certify that the technical and operational standards at the court and the remote location are in compliance with the requirements of sub. (1)." § 885.54(2).

¶54   Providing a means for private communication with counsel during the entire hearing is mandatory, unless waived or agreed otherwise. "Parties to circuit court proceedings may waive the technical and operational standards provided in this subchapter, or may stipulate to any different or modified procedure, as may be approved by the court." § 885.62.

### III.

¶55   The Fourteenth Amendment provides that the states may not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. When analyzing a due process claim, a court first determines whether the claimant has been deprived a liberty or property interest. If so, it determines whether the procedures employed were constitutionally sufficient. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). An order to pay restitution deprives a defendant of a property interest, so restitution hearings must comport with due process. *Nelson v. Colorado*, 581 U.S. 128, 134–35 (2017); *State v. Pope*, 107 Wis. 2d 726, 730, 321 N.W.2d 359 (1982). Thus, the question in this case is whether the circuit court used constitutionally adequate procedures during the Zoom hearing to determine Grady's ability to pay restitution.

¶56   "Whether the process provided by the circuit court satisfies due process is a question of constitutional law. This court determines questions of constitutional law independently of the circuit court, but benefiting from its analysis." *State v. Beyer*, 2006 WI 2, ¶19, 287 Wis. 2d 1, 707 N.W.2d 509.

¶57   "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting another source). "[P]rocedural due process includes a 'fair hearing' in accord with fundamental fairness." *Panetti v. Quarterman*, 551 U.S. 930, 949 (2007). "The core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson*, 522 U.S. 262, 266 (1998).

¶58   To determine the process due at a restitution hearing the court applies the *Mathews* three-part test. *Nelson*, 581 U.S. at 134–35. The court

weighs (a) the private interest at stake; (b) the risk of an erroneous deprivation of that interest due to the procedures used; and (c) the government's interest at stake, including the fiscal and administrative burdens that additional procedures would entail. *Mathews*, 424 U.S. at 335. I address each of the *Mathews* factors in turn.

A.

¶59    Grady had a substantial property interest at stake during the restitution hearing. Due to a stipulation, he was potentially on the hook for $19,571.28. His only remaining defense was arguing an inability to pay that amount based on the factors in § 973.20(13)(a)2.-4. Whatever Grady's past ability to pay parking tickets may have been, it is undisputed that at the time of his crimes he was unemployed, homeless, and experiencing a mental health crisis. He was ordered to undergo not one, but two competency examinations, but found competent to proceed. At the time of his restitution hearing, he was earning only prison wages and had a baby to help support.

B.

¶60    At the outset of Grady's Zoom restitution hearing, the circuit court did not inform him that there was a means available for private communication with counsel or explain how to request a private communication. The failure to provide this information created an unacceptable risk of an erroneous deprivation of his property interest.

¶61    The attorney-client privilege protects confidential communications made to obtain legal advice. WIS. STAT. § 905.03(2); *see also* SCR 20:1.6 (prohibiting attorneys from revealing client confidences except in narrow circumstances). The privilege serves "to encourage full and frank communication between attorneys and their clients" and thus promotes "broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see also* SCR 20:1.6, ABA Comment 2 (the privilege encourages clients to speak freely with counsel even about "embarrassing or legally damaging subject matter").

¶62    While the attorney-client privilege is not a constitutional right, the opportunity to communicate confidentially with counsel is a critical component of due process. "The Fourteenth Amendment guarantees meaningful access to courts [and] the opportunity to communicate privately with an attorney is an important part of that

meaningful access." *Guajardo-Palma v. Martinson*, 622 F.3d 801, 802 (7th Cir. 2010) (quoting another source).[6] Moreover, "the right to the effective assistance of counsel presupposes an opportunity to communicate effectively with counsel." *Feltz v. Regalado*, 751 F. Supp. 3d 1198, 1234 (N.D. Okla. 2024). Thus, if a detainee and counsel are physically separated during a video bail hearing, due process requires "the opportunity for confidential communication between the attorney and client before and during the hearing." *Id.* at 1215.

¶63    Our videoconference rules confirm the importance of private attorney-client communication during court hearings. As noted, § 885.54(1)(g) mandates the availability of a "private voice communication facility" throughout a videoconference court hearing in specific cases. Circuit courts have "the discretion to determine the manner and extent of the use of videoconferencing technology," subject to limitations. § 885.50(1). In fact, our rules stress that the failure to comply with "the technical and operational standards set forth in in this subchapter" may "result in abridgement of fundamental rights of litigants" and "loss of the fairness, dignity, solemnity, and decorum of court proceedings that is essential to the proper administration of justice." § 885.50(3).

¶64    Our videoconference rules do not explicitly require circuit courts to explain that there is a means available for private communication with counsel. But § 885.62 provides that the standards are mandatory unless the parties "waive" these technical and operational standards or "stipulate" to different procedures. A litigant cannot waive a statutory right to a means for communicating privately with his attorney unless he first knows that he has the right and what the means for the communication is. *See, e.g., Brunton v. Nuvell Credit Corp.,* 2010 WI 50, ¶36, 325 Wis. 2d 135, 785 N.W.2d 302 ("[A] valid waiver that intentionally relinquishes a right must be done with actual knowledge of the right being waived.").

---

[6] *See also* Eric T. Bellone, *Private Attorney-Client Communications and the Effect of Videoconferencing in the Courtroom*, 8 J. INT'L COM. L. & TECH. 24, 30 (2013) ("Just as with a client who is mentally incompetent to stand trial, a client who cannot privately communicate with their attorney because of an inadequate videoconferencing arrangement is compromised in his ability to make rational decisions, or to produce ideas and thoughts necessary for achieving fundamental fairness.").

¶65 The Massachusetts Supreme Court held that a termination of parental rights proceeding conducted over Zoom violated due process in part because the trial court did not tell the respondent that a tool was available for private communication with counsel and did not explain how to request it and use it:

> [I]t is not clear whether the Zoom videoconferencing platform utilized in this trial had a private "breakout room" function that would have allowed the mother to consult with stand-by counsel at any time during the hearing. If that feature was available, the record does not reflect that the judge made the mother aware of it on the record. An explanation of what a breakout room is and how it can be requested and used during a trial should be part of the instructions provided before the commencement of a virtual trial.

*Adoption of Patty*, 489 Mass. 630, 645–46, 186 N.E.3d 184 (2022).

¶66 That approach is sound. Circuit courts cannot assume that parties are tech-savvy or familiar with the court's chosen videoconferencing platform. At an in-person hearing, a party can simply whisper to or pass a note to counsel. But when physically separated, it may not be clear whether private communication is possible or how to initiate it.[7] The defendant or respondent must interrupt the hearing—conduct that is typically discouraged.

¶67 Thus, in my view, at the start of a videoconference hearing for the cases listed in in § 885.54(1)(g), due process requires the circuit court to state that a means for private communication with counsel is available and explain how to request it.

---

[7] According to a national study, defense lawyers and prosecutors agree that age, race, and indigency affect a defendant's technological literacy. "One judge in Milwaukee noted: 'Some of my older, I would say 40+, 45+ individuals charged with crimes, they just cannot figure out Zoom.'" *See* TAYLOR BENNINGER ET AL., VIRTUAL JUSTICE? A NATIONAL STUDY ANALYZING THE TRANSITION TO REMOTE CRIMINAL COURT 78–79 (Stanford L. Sch., Aug. 2021), https://law.stanford.edu/wp-content/uploads/2021/08/Virtual-Justice-Final-Aug-2021.pdf (last visited May 20, 2025).

¶68    The circuit court's failure to give Grady this basic information unacceptably risked an erroneous deprivation of his interest in limiting restitution to his ability to pay. He had been struggling with mental health problems from the beginning of his case. He appeared in person for all seven prior court hearings.[8] The restitution hearing was the first where he appeared from prison via Zoom. Nothing in the record suggests that Grady knew that there was means to communicate privately with his attorney during his virtual appearance.

¶69    The circuit court's statement that Grady could converse with counsel "off the record" only made matters worse. For a layperson, "off-the-record" means "given or made in confidence and not for publication."[9] As a result, Grady had a candid conversation with his lawyer about his past payment of $3,000 in parking tickets. That disclosure undermined his only defense to restitution: his ability to pay.

¶70    The circuit court's warning to Grady that "everybody could hear him" did not mitigate the harm. Because the circuit court ensured that the conversation would not "show up in the transcript," it is unclear whether the warning came before or after Grady made the damaging statement. Either way, the warning did not make clear that Grady was "off the record" for purposes of consulting with counsel, but "on the record" for purposes of determining his ability to pay. This contradiction placed him at a significant disadvantage. The State used Grady's "off the record" comments to argue that he could pay the full $19,571.28, and it succeeded. *See Guajardo-Palma*, 622 F.3d at 802 (allowing a litigant to eavesdrop on a conversation between his opponent and his opponent's lawyer puts the opponent at a critical disadvantage).

---

[8] At a brief December 2021 competency hearing Grady appeared in person, while his counsel appeared by Zoom. The circuit court did not inform Grady that there was a means for communicating with counsel privately or how to request it.

[9] *Off-the-record*,    MERRIAM-WEBSTER.COM,    https://www.merriam-webster.com/dictionary/off-the-record (last visited May 18, 2025); *see also Off-the-record*, DICTIONARY.COM, https://dictionary.com/browse/off%20the%20record (last visited May 18, 2025) ("1. not for publication; not to be quoted. 2. confidential").

C.

¶71     The State has no interest in obtaining a restitution order exceeding a defendant's ability to pay. While one purpose of restitution is to make the victim whole, the other purpose is to rehabilitate the defendant. *Sweat*, 208 Wis. 2d 409, ¶21. "Restitution can aid an offender's rehabilitation by strengthening the individual's sense of responsibility." *Huggett v. State*, 83 Wis. 2d 790, 798, 266 N.W.2d 403 (1978). But "absent a meaningful determination of the defendant's ability to pay, restitution loses a large part of its significance." *State v. Fernandez*, 2009 WI 29, ¶24, 316 Wis. 2d 598, 764 N.W.2d 509. To this end, § 973.20(13)(a)2.-4. provide that the circuit court "shall consider" the defendant's financial resources, present and future earning ability, and the needs and earning ability of the defendant's dependents.

¶72     Nor does the State have an interest in preventing, minimizing, or attending conversations between a defendant and counsel during videoconference proceedings in order to move them along. To the contrary, § 885.54(1)(g) mandates a "separate private voice communication facility" for private attorney-client communications shall be available "during the entire proceeding." The additional procedures that due process requires—informing the defendant that a means exists for private communication and explaining how to request it—impose no fiscal or administrative burdens on the circuit court.

¶73     Grady's restitution hearing was fundamentally unfair. He had a substantial interest in limiting the amount of restitution to his ability to pay. The circuit court's procedures—telling Grady he could talk to counsel "off the record" while failing to advise him of the means available for a private attorney communication and how to use it—created an unacceptable risk of an erroneous deprivation of his interest. Plus, the State has no interest in obtaining a restitution award in excess of Grady's ability to pay. I would hold that the circuit court denied Grady due process and order a new hearing on his ability to pay $19,571.28 in restitution. Accordingly, I respectfully dissent.